[No. 64483-7.  En Banc.]
Argued January 21, 1997.    Decided March 6, 1997.

Citizens for More Important Things, et al.,
*Appellants*, v. King County, et al., *Respondents*.

412

*Montgomery, Purdue, Blankinship & Austin*, by *John D. Blankinship*, for appellants.

*Norm Maleng, Prosecuting Attorney*, and *Kendall H. Moore* and *Susan N. Slonecker, Deputies*, for respondents.

JOHNSON, J. — This case involves an action under article VII, section 1 of the Washington Constitution challenging certain ordinances passed by King County (County) which implement various funding provisions of Engrossed House Bill 2115 (the Stadium Act). LAWS OF 1995, 3d Spec. Sess., ch. 1. Appellants, Citizens for More Important Things and Chris Van Dyk (Citizens), assert the expenditure of public funds by the County for preconstruction costs of a major league baseball stadium prior to the County obtaining a

binding commitment from a major league baseball team to play in the stadium is not for a valid public purpose. On cross-motions for summary judgment, the Superior Court dismissed Citizens' complaint and granted the County's motion for summary judgment and declaratory relief. We affirm.

## FACTS

We are familiar with the facts giving rise to this case having recently considered and filed an opinion in *CLEAN v. State*, 130 Wn.2d 782, 928 P.2d 1054 (1996) (addressing the constitutionality of the Stadium Act which authorizes various measures for the construction of a major league baseball stadium in King County). Following the Legislature's passage of the Stadium Act in an October 1995 special session, the County passed several ordinances implementing that legislation in order to begin the process of building a baseball stadium, including King County Ordinance 12000 (Oct. 25, 1995), Ordinance 12176 (Mar. 29, 1996), and Ordinance 12213 (Apr. 19, 1996).

Through Ordinance 12000, the County implemented the various taxes authorized by the Stadium Act, created the Washington State Major League Baseball Stadium Facilities District (SFD) and an independent financial review committee, and authorized the assembly and conveyance to the SFD of real property necessary for the baseball stadium. Next, the County passed Ordinance 12176, appropriating $24,240,477 to the stadium project and authorizing moneys received from the State to be passed through to the SFD, in order to pay for preconstruction costs of the baseball stadium.

Shortly thereafter, the County realized the Stadium Act did not authorize State funds to be directly passed through to the SFD. The Stadium Act authorizes the funds generated by license plate and scratch ticket sales "for the purpose of paying the principal and interest payments on bonds issued by the county to construct a baseball stadium,

. . ., including reasonably necessary preconstruction costs." LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 103(3), 105. Therefore, the County enacted Ordinance 12213 authorizing the issuance of $5 million in bond anticipation notes, guaranteed by the State lottery and license plate revenues, to provide financing to the SFD for preconstruction costs.

On May 20, 1996 (approximately one month after Ordinance 12213 was enacted), Citizens filed its complaint in King County Superior Court. Citizens' complaint alleged:

> 9. The collection and disbursement of taxes for construction of a new stadium which may never be built and which is to be designed and built for a single tenant who has not yet committed to use the stadium if and when built is an improper and unjustified gamble with taxpayer funds. Such gamble with tax collections is not a proper public purpose and is contrary to Article 7, § 1, of the Washington State Constitution.

Clerk's Papers at 4-5. The complaint also alleged the financing provision of Ordinance 12213 was an "illegal sham."

Following cross motions for summary judgment, the trial court entered its order on August 26, 1996, granting the County's motion for summary judgment, declaring Ordinances 12000, 12176, and 12213 valid, and dismissing Citizens' complaint with prejudice. Citizens filed a direct appeal to this court, which we accepted. We find the issues presented in this case are controlled by our recent opinion in *CLEAN,* 130 Wn.2d 782, and affirm the trial court.

## ANALYSIS

The issues properly before this court are narrowly limited to: (1) whether preconstruction costs for a baseball stadium are for a proper article VII, section 1 public purpose when there is no binding commitment by the prospective tenant to lease the stadium; and (2) if the answer to the first issue is yes, whether the financing mechanism

embodied in Ordinance 12213 is an "illegal sham." Accordingly, while both parties have brought to our attention the lease agreement between the SFD and Baseball Club of Seattle, the County ordinance authorizing the sale of $336 million in construction bonds, and the declaratory judgment action filed by the County on January 18, 1997, none of those agreements or actions, nor any of the sub-issues raised therein, are before us for consideration at this time.

■■ This case was resolved on cross-motions for summary judgment in the Superior Court; therefore, our review of the issues is de novo. *Fell v. Spokane Transit Auth.*, 128 Wn.2d 618, 625, 911 P.2d 1319 (1996). A party challenging the constitutionality of a legislative enactment bears the burden of proving, beyond a reasonable doubt, that the enactment is unconstitutional. *Erickson & Assocs., Inc. v. McLerran*, 123 Wn.2d 864, 869, 872 P.2d 1090 (1994). Here, Citizens has not met its burden of proving beyond a reasonable doubt the unconstitutionality of the County ordinances at issue.

Preconstruction Costs

Citizens' argument may be reduced to a single sentence: The expenditure of public funds for the preconstruction costs of a baseball stadium, designed to the specifications of a single prospective tenant, and without that prospective tenant's binding commitment to lease the stadium, is not for a public purpose as required by article VII, section 1 of the Washington Constitution. Citizens neither cites nor provides any authority for this proposition.

In *CLEAN*, this court upheld the validity of the Stadium Act under article VII, section 1. *CLEAN*, 130 Wn.2d at 796. The Stadium Act authorizes the collection and use of certain State (license plate and lottery sales) and County (sales and use taxes) revenue sources to fund the building of a baseball stadium. LAWS OF 1995, 3d Spec. Sess., ch. 1, pts. I and II. Additionally, the Stadium Act explicitly

authorizes the expenditure of these revenues for preconstruction costs of a baseball stadium. LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 103(3), 105, 201(3).[1] Finally, the Stadium Act contains a limit on the collection of these revenues: neither County nor State stadium revenues may be collected after June 30, 1997, unless a major league baseball team has signed a legally enforceable contract to, among other things, play in the stadium for at least 20 years. LAWS OF 1995, 3d Spec. Sess., ch. 1, § 201(4)(a). While this section explicitly applies only to the County tax collections, the State license plate revenues are also limited because they may be collected only while the aforementioned County taxes are being collected. LAWS OF 1995, 3d Spec. Sess., ch. 1, § 103(3).

█ The Stadium Act authorizes the collection of revenues prior to obtaining a legally binding commitment for a major league baseball team. At the same time, the Stadium Act authorizes the expenditure of such revenues for the preconstruction costs associated with the project. Therefore, the Stadium Act, as upheld by this court in *CLEAN*, authorizes the expenditure of public funds for preconstruction costs of a baseball stadium without the agreement of a major league baseball team to play in the stadium, at least until June 30, 1997.

Citizens fails to offer any authority for its position to the contrary. Therefore, we hold the expenditure of preconstruction costs by the County, as explicitly authorized by the Stadium Act, to be for a valid public purpose.

### Ordinance 12213 and Bond Anticipation Notes

█ While County tax revenues may be expended directly for preconstruction costs of the baseball stadium, the Stadium Act limits the expenditure of the State license plate and lottery revenues "for the purpose of paying the

---

[1]As will be discussed, *infra*, expenditure of the State revenues is authorized for preconstruction costs, but limited to payments of principal and interest on bonds issued for construction or preconstruction of the baseball stadium. LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 103, 105.

principal and interest payments on bonds issued by the county to construct a baseball stadium, . . ., including reasonably necessary preconstruction costs." LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 103(3), 105. Recognizing this, the County issued $5 million in bond anticipation notes for preconstruction costs, pledging the payment of State lottery and license plate revenues. RCW 39.50 authorizes municipalities to issue short term obligations for "any lawful purpose" in anticipation of the sale of general obligation bonds if the general obligation bonds may be issued without the assent of the voters. RCW 39.50.020.

Again, Citizens' argument can be reduced to a single sentence: It is not a "lawful purpose" to expend funds on preconstruction costs for a stadium designed for a single tenant who has yet to commit to lease the stadium. As demonstrated in the previous section, this court has held the Stadium Act is for a valid article VII, section 1 public purpose. The Stadium Act authorizes the expenditure of the State revenues for paying principal and interest for bonds issued to build the stadium, including preconstruction costs. Because the preconstruction costs of the stadium are for a lawful public purpose, the County did not act illegally in issuing bond anticipation notes under RCW 39.50. Because the County has legally issued bond anticipation notes, it may use the State revenues to pay the principal and interest on those notes. Additionally, Ordinance 12213 complies with the requirements of the Stadium Act because the bond anticipation notes fall within the definition: "bonds issued by the county to construct a baseball stadium, . . ., including reasonably necessary preconstruction costs." LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 103(3), 105. We find the funding mechanism embodied in Ordinance 12213 is not an "illegal sham."

## CONCLUSION

Citizens offers no substantive argument or authority for its contentions regarding the expenditure of funds for preconstruction costs and the issuance of bond anticipation

notes. The Superior Court granted the County's motion for declaratory judgment, finding Ordinances 12000, 12176, and 12213 valid. Our majority opinion in *CLEAN v. State, supra,* answers both of Citizens' arguments. Therefore, we affirm the judgment and order of the Superior Court.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, and ALEXANDER, JJ., concur.

SANDERS, J. (dissenting) — King County ordinance 12213 pledges state revenue to repay bond anticipation notes contrary to sections 103(3) and 105 of the Stadium Act. Local ordinances which violate or conflict with general statutes are invalid, *Employco Personnel Servs., Inc. v. City of Seattle,* 117 Wn.2d 606, 617, 817 P.2d 1373 (1991), and are unconstitutional. CONST. art. XI, § 11; *State v. Truong,* 117 Wn.2d 63, 67, 811 P.2d 938 (1991); *Adams v. Thurston County,* 70 Wn. App. 471, 479, 855 P.2d 284 (1993).

We previously held in *CLEAN v. State,* 130 Wn.2d 782, 790, 928 P.2d 1054, 1058 (1996), the Stadium Act "provided that moneys collected under it may *only* be used to pay on the bonds issued to *construct* the stadium" (emphasis added) (citing LAWS OF 1995, 3d Spec. Sess., ch. 1, §§ 101(3) at 1, 103(3) at 3, 105(5) at 3, 201(3) at 4, 203(3)(a) at 7).

Section 103(3) of the Stadium Act provides a portion of state license plate revenue "shall be distributed to a county for the purpose of paying the principal and interest payments on bonds issued by the county *to construct a baseball stadium,* as defined in section 101 of this act, *including* reasonably necessary preconstruction costs . . . ." LAWS OF 1995, 3d Spec. Sess., ch. 1, § 103(3) (emphasis added). Section 105 similarly restricts distribution of state lottery revenue: "The moneys in the state lottery account shall be used *only* . . . for distribution to a county for the purpose of paying the principal and interest payments on bonds issued by the county to *construct a*

baseball stadium, as defined in section 101 of this act, *including* reasonably necessary preconstruction costs . . . ." *Id.* at 105(5) (emphasis added). Neither provision, however, permits diversion of state revenue to pay preconstruction costs separate from the cost of actual construction, and that is exactly how the provision was construed in *CLEAN*, 130 Wn.2d 782.

Ordinance 12213, however, pledges these state revenues to pay stadium preconstruction costs whether or not there is ever a binding commitment to actually construct a stadium, much less the issuance of construction bonds as contemplated in the Stadium Act. Rather, ordinance 12213 contemplates the issuance of $5 million in bonds "to provide financing to the District for preconstruction costs of the Project," Clerk's Papers at 53 (ordinance 12213, § 2), without conditioning the issuance of those bonds, or the undertaking of the obligation, upon the subsequent issuance of construction bonds at all.

To put it another way, county ordinance 12213 facially directs the diversion of state revenues[2] for the payment of stand-alone preconstruction costs contrary to the absolute statutory requirement that preconstruction costs only be funded by state revenue when included as a component of actual construction costs. In short, the Stadium Act conditions the allocation of state revenues upon the actual construction of a stadium whereas the local ordinance does not.

I agree with the majority, as a general proposition, that bond anticipation notes may be issued in anticipation of the formal issuance of bonds, *see* RCW 39.50.020; however, the issue here is whether state revenues "legally available" for one limited purpose may be pledged by a county

---

[2]"In addition, the County hereby pledges to the payment of the Notes and covenants to deposit into the Note Fund upon receipt amounts that the County receives from the State of Washington in accordance with Sections 103 and 105 of EHB No. 2115, representing state lottery and special license plate revenues and to use such revenues prior to any other funds of the County to pay the principal of and interest on the Notes." Clerk's Papers at 54 (ordinance 12213).

to repay bond anticipation notes issued for a different purpose. I think not. The majority opinion, however, appears to miss the entire issue in its haste.

Let us also recall ordinance 12213 pledging state revenues to repay bond anticipation notes for uniquely preconstruction costs was approved on April 19, 1996, a point in time before there was any lawfully binding commitment to actually build a stadium, much less issue bonds to finance its construction and preconstruction costs as contemplated by the state statute. By operation of ordinance 12213 state tax revenues are diverted to the unlawful purpose of paying merely preconstruction costs contrary to the state Legislature's guarantee to state taxpayers that the project will successfully proceed to the construction phase to qualify for state funds.

King County's ordinance 12213 conflicts with the Stadium Act. It is therefore an invalid diversion of state revenues to an unlawful purpose. I would so hold and accordingly dissent.