[No. 17116-7-III.   Division Three.   June 10, 1999.]

THE STATE OF WASHINGTON, *Appellant*, v. AARON C. BROWN, *Respondent*.

*Christine O. Gregoire, Attorney General*, and *Talis M. Abolins, Assistant*; *James L. Nagle, Prosecuting Attorney*, and *James R. Reierson, Deputy*, for appellant.

*Makus & Makus*, by *Jerry M. Makus*, for respondent.

BROWN, J. — Aaron Brown's prosecution for persistent prison misbehavior, RCW 9.94.070, was dismissed when the trial court held the statute unconstitutionally delegated to the Department of Corrections (DOC) the power to define a serious infraction, an element of the crime. We agree with the trial court that the delegation was unconstitutional because of inadequate procedural safeguards. Thus, we do not reach Mr. Brown's other contentions related to DOC's failure to establish rules and vagueness. Accordingly, we affirm.

## FACTS

An inmate in the custody of the DOC may be allowed "time credit reductions" from his or her term of imprisonment. RCW 9.95.070; WAC 137-28-160. This occurs when prison superintendents recommend to the indeterminate sentence review board (formerly the board of prison terms and paroles) that an inmate's conduct and work is meritorious and the board adopts the recommendation. RCW 9.95.070. The purpose statement, WAC 137-28-140, provides the rules do not apply to proceedings of the indeterminate sentence review board and do not create any procedural or substantive rights. Rather, they are intended as guidelines.

The Legislature, in 1995, required DOC to adopt, by rule, "a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges." RCW 72.09.130(1). The system was to include increasing and decreasing inmate liberty within the DOC programs, withholding privileges within the institutions, and "recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance." RCW 72.09.130(1). "Earned early release days shall be recommended by the department as a reward for accomplishment." RCW 72.09.130(2). This last subsection directs DOC to annually inform inmates of their progress in writing.

Further, inmates are not eligible "to receive earned early release days during any time in which he or she refuses to participate in an available education or work program into which he or she has been placed under RCW 72.09.460." RCW 72.09.130(2).

In 1995, the Legislature also enacted RCW 9.94.070 creating the crime of persistent prison misbehavior, a class C felony, and provided for consecutive sentencing to the underlying offense. RCW 9.94.070 provides in part:

> (1) An inmate of a state correctional institution who is serving a sentence for an offense committed on or after August 1, 1995, commits the crime of persistent prison misbehavior if the inmate knowingly commits a serious infraction, that does not constitute a class A or class B felony, after losing all potential earned early release time credit.

> (2) "Serious infraction" means misconduct that has been designated as a serious infraction by department of corrections rules adopted under RCW 72.09.130.

Prior to the enactment of RCW 9.94.070, the DOC had for many years defined serious infractions in its disciplinary code, WAC 137-28, adopted under the general powers granted to DOC in RCW 72.01.090. After the adoption of RCW 9.94.070, DOC continued to administer its discipline system under RCW 72.01.090 and did not adopt rules under RCW 72.09.130. Although updated disciplinary rules became effective shortly after the enactment of RCW 9.94.070, the revision was not connected to the passage of RCW 9.94.070.

Mr. Brown, convicted in 1996, is an inmate in the custody of DOC. He repeatedly committed serious infractions and soon lost all time credits. In February 1997, a correction officer requested Mr. Brown to stand for a search so that the officer could safely enter his cell and he refused. Mr. Brown was charged with refusing to submit to or cooperate in a search, serious infraction 556, under WAC 137-28-260. Because Mr. Brown had exhausted his credits he was charged with persistent prison misbehavior.

Mr. Brown moved to dismiss arguing equal protection, vagueness, failure to properly create rules under the specific statute, and unlawful delegation. The trial court dismissed, solely on the ground that the Legislature had improperly delegated its authority under article II, section 1 of the Washington Constitution. The State appealed. Mr. Brown cross-appealed.

## ANALYSIS
### A. Delegation

The issue is whether the trial court erred by dismissing the prosecution against Mr. Brown and concluding RCW 9.94.070 constituted an unconstitutional delegation of legislative authority to DOC under article II, section 1 of the Washington State Constitution. Mr. Brown's main contention is that the delegation lacks adequate procedural safeguards. Said another way, is it unconstitutional for the Legislature to delegate to DOC the authority to define serious infractions that in the future will become fill-in-the-blank elements of felonies without adequate safeguards to avoid an arbitrary exercise of authority or an abuse of discretion?

A statute is presumed constitutional and the parties challenging its constitutionality must demonstrate its unconstitutionality beyond a reasonable doubt. *Belas v. Kiga*, 135 Wn.2d 913, 920, 959 P.2d 1037 (1998). Constitutional challenges are reviewed de novo. *Fusato v. Washington Interscholastic Activities Ass'n*, 93 Wn. App. 762, 766, 970 P.2d 774 (1999) (citing *Washam v. Sonntag*, 74 Wn. App. 504, 507, 874 P.2d 188 (1994)).

A delegation of legislative power may be justified if two requirements are met. First, it can be shown that the Legislature has provided standards which in general terms defines what is to be done and the administrative body that is to do it. Second, procedural safeguards exist to control arbitrary administrative action and abuse of discretion. *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81

Wn.2d 155, 159, 500 P.2d 540 (1972); *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 900, 602 P.2d 1172 (1979).

With regard to the first requirement, the Legislature has defined in general terms what is to be done: the DOC must issue rules defining "serious infraction." The Legislature has also indicated the DOC is the administrative agency responsible for this task. The standards are arguably sufficient. *See Barry & Barry*, 81 Wn.2d at 163. We find no fault with the first requirement.

The Legislature must, however, also provide procedural safeguards. No hard and fast rules exist. DOC's disciplinary rules are excluded from the Administrative Procedure Act (APA) rule-making requirements. *See* RCW 34.05-.030(1)(c); WAC 137-28 (reviser's note). The exclusion from the APA rule-making procedures does not, per se, compel a finding that procedural safeguards are insufficient. *See McDonald v. Hogness*, 92 Wn.2d 431, 446, 598 P.2d 707 (1979); *cf. Crown Zellerbach*, 92 Wn.2d at 903 (failure of the Departments of Fisheries and Game to promulgate rules and regulations under the APA was not a proper ground for dismissal).

In *Crown Zellerbach*, the defendant was charged with noncompliance with the conditions of a hydraulic project permit issued by the Departments of Game and Fisheries. The departments had adopted the permit conditions after public hearings but none of the provisions had been formally promulgated as regulations under the WASHINGTON ADMINISTRATIVE CODE. *Id.* at 898, 903. The court found procedural safeguards existed because the defendant was entitled to (1) a "second look" through agency channels; (2) judicial review under the clearly erroneous standard; and (3) the procedural safeguards that are normally afforded a defendant in a criminal prosecution. *Id.* at 901.

*Crown Zellerbach* concerned a gross misdemeanor. Where a felony is in question agencies must provide adequate notice for the procedural safeguards to be sufficient. *See In re Personal Restraint of Powell*, 92 Wn.2d 882, 893, 602 P.2d 711 (1979); *State v. Holmes*, 98 Wn.2d 590, 595-96, 657 P.2d

770 (1983). In *Powell*, the Legislature delegated to the Board of Pharmacy the authority to promulgate rules classifying drugs as controlled substances. The Board used this authority to classify dalmane as a controlled substance using an emergency rule-making process that excluded the usual notice and public comment procedures. The sole notice appeared in a monthly bulletin distributed by the office of the Code Reviser. As a result of the classification, the possession of the drug became a felony. *Id.* at 892. The court found the Legislature had unlawfully delegated its authority because there were "almost nonexistent" procedural safeguards. *Id.* at 893. Furthermore, in *Powell*, the defendant received no notice because of the emergency rule-making procedures relied on by the Board of Pharmacy. Here, we address a similar problem.

The State argues four procedural safeguards are present. First, DOC publishes the rules. DOC gives a copy of the rules to each inmate and posts them in the institutions where they are likely to be viewed by the inmates. Second, DOC channels provide a "second look" opportunity by internal appeal. Third, prisoners may challenge the serious infraction rules and procedures by personal restraint petitions as a form of judicial review. Fourth, each prisoner charged is entitled to a criminal trial in superior court and direct appeal.

At argument, we discussed a hypothetical. What if in the future, DOC decides chewing gum is a serious infraction without the requirement of first submitting the matter to legislative review and approval as is now possible under the law? Appellate counsel for DOC conceded this possibility, but argued the four suggested safeguards would still suffice. We disagree, and explain why.

Although giving inmates copies of the disciplinary code and providing them a rough form of hearing and review, due process requirements are, to a degree, advanced; these steps are insufficient because when a felony looms, adequate notice of the *felony* is required. *See Powell*, 92 Wn.2d at 893; *Holmes*, 98 Wn.2d at 595-96. Here, the infractions

are defined merely for the purpose of internal prison discipline and do not give notice to the inmate of the potential felony effect. Further, DOC contends it provided interested parties an opportunity to comment on the revised definitions of serious infractions as part of a systemic review process in advance of their reenactment. However, no notice was given that the serious infractions could become elements of a felony.

In essence, DOC first decides what is a serious infraction. Then, internal review of the infraction process is accomplished by one of its own staff officers in the grade of lieutenant or above. This process may suffice for internal discipline; however, to permit DOC to decide both what constitutes a matter of internal discipline and what constitutes an element of a felony goes too far. The internal review, in this context, is too close to the charging authority. No matter how well meaning, the review officer is likely to be viewed as having a vested interest in the outcome because of being too closely connected to the prison chain of command that approved the charge in the first place. This violates the principle that one who charges should not also sit in judgment.

Finally, providing for review after-the-fact by a personal restraint petition, criminal trial and direct appeal does not prevent a loss of liberty in the first place. An inmate gathering serious infractions, or even general infractions that may cumulate into a serious infraction, does not get a jury trial or judicial appeal.

Considering the four suggested safeguards as a whole, we conclude they do not sufficiently address the problem of delegating to DOC the authority to define a crime without legislative oversight or safeguard against prior loss of liberty. The suggested safeguards are inadequate to control and guard against arbitrary administrative actions or abuses of discretion prior to loss of liberty by criminal conviction. Here, although the Legislature adequately defined the crime in general terms, it unconstitutionally delegated the authority to DOC to finally give the crime its

complete definition. It did so by not retaining responsibility for final control over the authority it delegated or designating any, let alone adequate, procedural safeguards. Moreover, the procedures suggested as sufficient suffer from the same infirmity as found in *Powell*:

> In practical terms, a person cannot contest the promulgation of a rule of which she or he has not received notice. As this case sadly illustrates, the first opportunity a person would have to contest such a rule would occur after she or he is already involved in a serious criminal matter. We deem the procedural safeguards available in this case to be inadequate.

*Powell*, 92 Wn.2d at 893. We conclude the trial court correctly decided an unconstitutional delegation of authority occurred here.

Mr. Brown also contended that DOC failed to follow the explicit requirement in RCW 9.94.070(2) for the DOC to adopt rules under RCW 72.09.130. Although this appears technically correct, the trial court did not decide this issue. Instead, the trial court apparently accepted the proposition that the Legislature legislated with reference to the existing rules defining serious infractions. We need not address this last contention because our discussion above is dispositive. We note, however, that the problem of procedural safeguards discussed above would be further exacerbated by DOC's designation of new serious infractions subsequent to the passage of RCW 9.94.070.

## B. Vagueness

In light of our resolution of the above issue against the State, judicial restraint prevents us from examining Mr. Brown's cross-appeal related to the issue of whether the trial court erred by not dismissing the prosecution on the additional ground that RCW 9.94.070 is unconstitutionally vague. *State v. Peterson*, 133 Wn.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring).

## CONCLUSION

We hold the trial court did not err by concluding the

Legislature unconstitutionally delegated the authority to DOC to define serious infractions. Although the Legislature provided general terms to define what was to be done by the administrative body, the procedural safeguards claimed here are inadequate because they do not adequately control or guard against arbitrary administrative action or abuse of discretion. Even assuming legislative awareness of the present discipline system, inadequate procedural safeguards exist to protect against the adoption of future serious infractions without legislative oversight. Because the delegation issue is dispositive, we do not reach Mr. Brown's vagueness issue.

Affirmed.

KURTZ, A.C.J., and SWEENEY, J., concur.

Review granted at 139 Wn.2d 1015 (2000).