12 P.3d 134 (2000)
142 Wash.2d 328
STATE ex rel. PENINSULA NEIGHBORHOOD ASSOCIATION, Appellant,
v.
WASHINGTON STATE DEPARTMENT OF TRANSPORTATION; Sid Morrison, Secretary, Respondent.
No. 69432-0.
Supreme Court of Washington, En Banc.
Argued June 22, 2000.
Decided November 9, 2000.
*136 Preston, Gates & Ellis, Stephen Alan Smith, Seattle, amicus curiae on behalf of Safe Passage Across Narrows Now, et al.
Shawn Timothy Newman, Olympia, Eugster, Haskell, Stephen Kerr Eugster, Spokane, Cornelius J. Peck, Seattle, for Appellant.
Christine Gregoire, Atty. Gen., Deborah L. Cade, Asst. Atty. Gen., Olympia, for Respondent.
*135 GUY, C.J.
Peninsula Neighborhood Association (PNA) directly appeals from a declaratory and summary judgment finding the public-private transportation initiatives act (PPI Act), chapter 47.46 RCW, constitutional and the agreement between the Washington State Department of Transportation (WSDOT) and United Infrastructure Washington, Inc. (UIW) valid and enforceable. The issues before this court involve whether the PPI Act is constitutional, whether the advisory election and the rules adopted to implement the PPI Act are valid, and whether the agreement for the construction of a second Tacoma Narrows bridge is valid and enforceable. We affirm the trial court's ruling that the PPI Act is constitutional and that the challenge to the validity of the advisory election and the rules adopted to implement the PPI Act is barred by laches, but we reverse the trial court's ruling on the third issue and hold that the agreement violates existing state law and is therefore unenforceable.
The PPI Act was enacted in 1993. The goal of the act includes enhancement of the State's ability to provide an efficient transportation system by supplementing state transportation funds with private funds. RCW 47.46.010. The PPI Act authorizes the secretary of transportation to select up to six "demonstration project" proposals from private entities to test the feasibility of using the private sector to undertake public projects on behalf of WSDOT. RCW 47.46.030. The secretary is allowed to solicit proposals for new projects and negotiate agreements with private entities for the design, construction, operation, and maintenance of the facilities. RCW 47.46.030(1). Fourteen projects were submitted to WSDOT and six were selected to be demonstration projects. The project that is the subject of this litigation is the only remaining demonstration project; the other five projects have been terminated for various reasons.
The PPI Act has been amended several times since its initial enactment. The Legislature amended the PPI Act in 1995 requiring, among other things, a public involvement program and an advisory election. RCW 47.46.030(3), (11); Laws of 1995, 2d Ex.Sess., ch. 19, § 2. The next year the PPI Act was amended to require the advisory election be *137 held on the preferred alternative identified under the State Environmental Policy Act (SEPA), chapter 43.21C RCW. RCW 47.46.030(4); Laws of 1996, ch. 280, § 1. The statutory amendments gave WSDOT no direction on how to administer the advisory elections, so WSDOT adopted administrative rules to set out how to do so. WAC 468-105-010 through XXX-XXX-XXX. After the 1996 legislative amendment calling for the advisory election to be on the "preferred alternative," WSDOT amended its rules to reflect that this would be the preferred alternative identified in the draft environmental impact statement (EIS). WAC 468-105-020(11). The procedure used in adopting these amendments was challenged before the Joint Administrative Rule Review Committee in late 1997.
When the advisory election was held in November 1998, 53 percent of the voters in the affected area voted in favor of the new bridge project being financed through tolls. Following the election, Secretary of Transportation Sid Morrison announced that WSDOT would proceed with negotiating an agreement with UIW for the new bridge. The agreement sets out provisions for construction, maintenance, and financing of the bridge.
The negotiated agreement requires UIW to create a "special purpose entity" (SPE) to be an independent nonprofit corporation issuing the tax-exempt bonds. UIW contracts with the SPE to establish WSDOT as the SPE's management services contractor, and they then assume the responsibilities for carrying out all of the SPE's project obligations. Clerk's Papers at 641-42; Agreement at Section 2.3(b)(ii). As the operations and maintenance contractor, UIW is responsible to operate and maintain both the existing bridge and the new bridge at all times beginning with the commencement of tolling activities. Clerk's Papers at 697-98; Agreement at Sections 8.2(c)(i)(B) and 8.2(d)(i)(B). Thus, UIW is both the sole source management services contractor and, under the operations and maintenance contract, the sole operator of the project. The costs incurred by UIW for these operating and maintenance costs are payable from the "total revenues" (this term includes gross toll revenues and other revenue sources). Clerk's Papers at 697-98; Agreement at Sections 8.2(c)(ii)(C) and 8.2(d)(ii)(B). Under the agreement, the total revenues must be applied first to pay these operating and maintenance costs. The use of the total revenues in this manner has priority over all other uses including payment of principal and interest on the project debt, replenishment of debt service reserve accounts, and payments into and/or replenishment of, renewal and replacement reserve accounts. Clerk's Papers at 748-50; Agreement at Section 15.7-.8.
The current project would convert the existing Tacoma Narrows bridge from a four-lane two-way bridge to a three-lane one-way bridge for westbound traffic going toward Gig Harbor. Eastbound traffic going toward Tacoma and I-5 would travel on a new three-lane one-way bridge to be built adjacent to the existing bridge. As the agreement provides, the project is to be funded through bonds issued by a nonprofit corporation controlled by the private developer. The bonds are to be paid through the charging of a round-trip toll. Clerk's Papers at 649; Agreement at Section 3.3(a)(ii).
PNA filed an action in the Thurston County Superior Court on July 6, 1999, alleging constitutional defects in the PPI Act and statutory violations by WSDOT in implementing the statute. PNA sought relief in the form of declaratory judgment and mandamus. In his oral ruling, Judge Daniel J. Berschauer dismissed all of PNA's claims and declared the PPI Act constitutional and the agreement between WSDOT and UIW valid and enforceable.
Judge Berschauer held that there were no genuine issues of material fact in dispute and the issues in the case could be resolved as a matter of law. In doing so he concluded that PNA did not demonstrate the unconstitutionality of the PPI Act beyond a reasonable doubt. He reasoned that allowing the PPI Act to authorize demonstration projects and WSDOT to identify toll bridges is not an unlawful delegation of legislative power to set or create transportation policy. Judge Berschauer found that WSDOT maintains complete authority to select any of the proposals *138 submitted by the private entities. He reasoned that the general criteria set out in RCW 47.46.030 for selecting projects are sufficient to meet the constitutional challenge. Moreover, he found that the setting of tolls is an administrative function, so it is not a delegation of legislative authority.
In deciding the issues relating to the advisory election, Judge Berschauer ruled that the election is merely advisory so any irregularities do not invalidate it. He also ruled that PNA's challenge is barred by laches due to its waiting eight months to challenge the election. PNA also brought SEPA claims that Judge Berschauer dismissed without prejudice. Lastly Judge Berschauer found that even though WSDOT did not strictly comply with all Administrative Procedure Act (APA), chapter 34.05 RCW, requirements for promulgating rules, it had substantially complied with the APA and thus the rules were valid.
PNA appealed this decision to Division Two of the Court of Appeals on March 10, 2000. WSDOT filed a motion to transfer the appeal to this court and to accelerate review. The motions were granted and we will now decide the issues presented.

ISSUES
(1) Is the PPI Act a constitutional delegation of legislative authority to WSDOT in delegating authority to identify toll bridges and set toll rates?
(2) Did WSDOT substantially comply with the APA in adopting rules to implement the PPI Act?
(3) Did WSDOT exceed its statutory authority when it applied the PPI Act to develop a project that involves tolling the existing Tacoma Narrows bridge?

DISCUSSION
The first issue we will address is the constitutionality of the PPI Act. The agreement was made pursuant to the PPI Act and we therefore must first determine whether the act is constitutional. In making this determination we must decide whether the PPI Act is a constitutional delegation of legislative authority in allowing WSDOT to identify toll bridges and set toll rates.
The standard of review is to prove the unconstitutionality of the statute beyond a reasonable doubt. Island County v. State, 135 Wash.2d 141, 146, 955 P.2d 377 (1998). Because the statute is presumed to be constitutional, the burden is on the challenging party to prove, beyond a reasonable doubt, that it is unconstitutional. Id.; Citizens for More Important Things v. King County, 131 Wash.2d 411, 415, 932 P.2d 135 (1997); Erickson & Assocs., Inc. v. McLerran, 123 Wash.2d 864, 869, 872 P.2d 1090 (1994). This means that one challenging a statute must, by argument and research, convince the court that there is no reasonable doubt that the statute violates the constitution. Island County v. State, 135 Wash.2d at 147, 955 P.2d 377. The assumption is that the Legislature considered the constitutionality of its enactment and thus should be afforded some deference. Id. Though ultimately, the judiciary decides whether a given statute is within the Legislature's power to enact or whether it violates a constitutional mandate. Id. This is analogous to what the United States Supreme Court has stated, "[d]ue respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 1748, 146 L.Ed.2d 658 (2000).
The Legislature has the authority to delegate administrative power. Keeting v. Pub. Util. Dist. 1, 49 Wash.2d 761, 767, 306 P.2d 762 (1957). In delegating administrative power the Legislature must define (a) what is to be done, (b) the instrumentality which is to accomplish it, and (c) the scope of the instrumentality's authority in so doing, by prescribing reasonable administrative standards. Id. The Legislature may also delegate legislative power in certain circumstances. In Barry & Barry v. Dep't of Motor Vehicles, 81 Wash.2d 155, 500 P.2d 540 (1972), we outlined a standard similar to the delegation of administrative power for the delegation of legislative power: *139 the delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.
Id. at 159, 500 P.2d 540 (emphasis omitted). In Barry we rejected the notion that specific standards need to accompany the delegation of power to an administrative agency. Id. at 161, 500 P.2d 540.
In support of its argument that the PPI Act is unconstitutional, PNA first argues that the decision to designate a new facility as a toll bridge is a legislative function. PNA also argues that the PPI Act illegally delegates authority to set toll rates because there are no procedural protections for consumers and the standard enunciated in the statute is not being used in the agreement. We disagree with PNA and find that the PPI Act is constitutional because it satisfies the requirements for a proper delegation of authority.
The PPI Act designates that WSDOT is to solicit proposals and negotiate agreements for six demonstration projects so as to promote an efficient transportation system. RCW 47.46.010. The Legislature has provided that the instrumentality accomplishing this is WSDOT, specifically the secretary of transportation. Id. The secretary solicits proposals and negotiates and enters into agreements for demonstration projects. RCW 47.46.030(1). The PPI Act requires program and fiscal audits of the PPI program and submission of progress reports on the program and fiscal audits. RCW 47.46.030(2). WSDOT develops a plan for public involvement that then must be adopted by the Legislature. Id. Projects that meet the minimum requirements of the act and have had the development plan approved by the Legislature are submitted to the transportation commission for review. Id. An advisory election is held on the proposed projects. RCW 47.46.030(3). In preparation for the advisory election, numerous committees consisting of citizens in the affected project areas are formed to analyze the impact of the projects. RCW 47.46.030(5), (6). A period of public comment is provided for as well. RCW 47.46.030(7), (8). Based on the statutory requirements set out in the PPI Act, we find that the Legislature has provided guidelines that define in general terms what is to be done and the instrumentality that is to accomplish it.
The next determination is whether the procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power. The PPI Act states that all projects must comply with applicable rules and statutes. RCW 47.46.040(1). The secretary is to consult legal, financial, and other experts in the negotiation and development of the agreements. RCW 47.46.040(2). Public participation is provided for through soliciting public opinion. RCW 47.46.040(10). The prescribed reasonable standard is to determine a maximum rate of return on investment. RCW 47.46.050(2). How user fees or tolls are to be applied and the length of time for repayment are required to be in the agreements. RCW 47.46.050(4). Because each of these steps is subject to approval, and more importantly the disapproval, adequate procedural safeguards are in place to protect against arbitrary administrative action and any administrative abuse of discretionary power. Moreover, toll payers would also have the ability to obtain review of toll setting as an agency action under the APA. RCW 34.05.010(3). The standard of review would be whether the action was unconstitutional, outside the statutory authority of the agency or the authority conferred by a provision of law, arbitrary or capricious, or taken by persons who were not properly constituted as agency officials lawfully entitled to take such action. RCW 34.05.570(4). This is an additional safeguard to keep the delegated power in check.
PNA argues that there is a long history of the Legislature identifying toll bridges. The fact that toll bridges have historically been identified through legislation does not mean *140 it is a nondelegable function. The standard and procedural safeguards set out in the PPI Act are sufficient for a constitutional delegation of a legislative function. PNA has not met the burden of proving beyond a reasonable doubt that the PPI Act is unconstitutional.
PNA identifies State v. Brown, 95 Wash. App. 952, 977 P.2d 1242 (1999), in support of its argument that this is an unconstitutional delegation of authority. In that decision, the Court of Appeals found unconstitutional the statute's delegation to the Department of Corrections (DOC) the power to define a serious infraction as an element of the crime. The court found the standard defining what is to be done sufficient in Brown because the Legislature stated that the DOC must issue rules defining "serious infraction." The court found that the procedural safeguards were not sufficient because they are excluded from APA rule-making requirements and only subject to internal review. As such there was no legislative oversight or safeguard against prior loss of liberty. The court found that the procedural safeguards were inadequate because they did not sufficiently control or guard against arbitrary administrative action or abuse of discretion. Brown is distinguishable from the case at hand in that there are sufficient procedural safeguards contained in the PPI Act. In Brown only internal checks on actions were taken, here there is legislative and public participation.
The PPI Act meets the test for a constitutional delegation of the power to identify toll bridges; the next question is whether the setting of the toll is a constitutional delegation of authority. This court has held that the fixing of tolls is an administrative function. State ex rel. Toll Bridge Auth. v. Yelle, 61 Wash.2d 28, 47, 377 P.2d 466 (1962). Therefore, in determining whether this is a constitutional delegation, the delegation of administrative power test is to be applied. As previously stated, the secretary of transportation is to negotiate and enter into agreements for the demonstration projects. These agreements are to prescribe a reasonable standard to determine a maximum rate of return on investment.[1] RCW 47.46.050(2). The agreement is required to outline how user fees or tolls are to be applied and the length of time for repayment. RCW 47.46.050(4). These requirements are sufficient to satisfy the test for a constitutional delegation of administrative authority.
The PPI Act identifies what is to be done and by whom. It identifies how the demonstration projects are to be selected, who is involved in the process, and what should be included in the financial arrangements. The PPI Act outlines procedural safeguards both in the selection process and in the financing arrangements. The PPI Act defines who is to negotiate and enter into agreements and that the agreements are to contain specific standards in determining user fees or tolls. Because the PPI Act contains sufficient direction and safeguards to justify the delegation of both the legislative and administrative authority, PNA has not met the burden of proving the unconstitutionality of the statute beyond a reasonable doubt. We therefore affirm the trial court's ruling that the PPI Act is constitutional.
The next issue is whether WSDOT substantially complied with the APA in adopting rules to implement the PPI Act. PNA argues that WSDOT did not substantially comply with the APA, and therefore the amended rules should be found invalid and the advisory election should be declared null and void. The trial court ruled that even if there were procedural flaws justifying voiding the election, the claim challenging both the rules and election is barred by laches. We agree.
The amendment in question was adopted in June 1997. The advisory election was held in November 1998. PNA waited over two years after the amendment was *141 adopted and eight months after the election to raise the issue in court. As a result of the delay in taking action, PNA's claim is barred by laches.
We have held that where there is a showing of some injury, prejudice, or disadvantage to the defendant or an innocent third party to such a degree that continuation of the action by a dilatory plaintiff would be inequitable is cause to bar the plaintiff's claim. LaVergne v. Boysen, 82 Wash.2d 718, 513 P.2d 547 (1973). LaVergne involved a special levy election for a school district in which at least two persons who were not residents within the school district voted. Id. at 719, 513 P.2d 547. The plaintiff alleged that the contested votes could be critical to the passage of the levy. Id. We held that there exists a substantial public interest in the finality of elections necessitating prompt challenges and the plaintiff's claim made 79 days after the election was barred by laches. Id. at 721, 513 P.2d 547.
In this case, substantial prejudice and disadvantage to the defendant would result if the advisory election were declared null and void. PNA waited eight months to raise the issue. In that time the result of the election was relied upon. This lawsuit was filed three weeks after the agreement was signed. The results of the election were relied upon throughout the negotiations. PNA had the opportunity to challenge the election earlier before the results were relied upon, but did not. Because the continuation of the action by this dilatory plaintiff would be inequitable, the challenge to the amended rule and advisory election is barred by laches.
The final issue to be considered is whether the agreement, made pursuant to the PPI Act, exceeds its statutory authority. PNA contends that WSDOT exceeded its statutory authority in applying the PPI Act to develop a "demonstration project" that involves maintaining, operating, and tolling the existing Tacoma Narrows bridge when state law provides that the existing bridge shall be toll free and operated, maintained, and repaired with state highway funds. We agree and hold that the agreement violates existing state law and is therefore unenforceable as currently written.
Prior to the enactment of the PPI Act, the Legislature had in place statutes addressing the existing Tacoma Narrows bridge. RCW 47.56.270 Lake Washington and Tacoma Narrows bridges part of primary highways states:
The Lake Washington bridge and the Tacoma Narrows bridge in chapter 47.17 RCW made a part of the primary state highways of the state of Washington, shall, upon completion, be operated, maintained, kept up, and repaired by the department in the manner provided in this chapter, and the cost of such operation, maintenance, upkeep, and repair shall be paid from funds appropriated for the use of the department for the construction and maintenance of the primary state highways of the state of Washington.
RCW 47.56.271 Tacoma Narrows bridge Toll free facility states:
The Tacoma Narrows bridge hereinbefore by the provisions of RCW 47.17.065 and 47.56.270 made a part of the primary state highways of the state shall be operated and maintained by the department as a toll-free facility at such time as the present bonded indebtedness relating thereto is wholly retired and tolls equaling the present indebtedness of the toll bridge authority to the county of Pierce have been collected. It is the express intent of the legislature that the provisions of RCW 47.56.245[2] (section 47.56.245, chapter 13, Laws of 1961) shall not be applicable to the Tacoma Narrows bridge.
The transportation commission fixes toll rates for bridges coming under the purview of RCW 47.56.240. As such, the transportation *142 commission is to fix toll rates for the existing Tacoma Narrows bridge because the existing bridge is included under this chapter.
WSDOT argues that the PPI Act and the statutes relating to the existing bridge can be reconciled and both given effect but also argues that if we find they cannot be reconciled, the PPI Act should supersede preexisting statutes. We agree that the statutes may be reconciled and both given effect, however, the agreement violates the statutes pertaining to the existing bridge and as a result is unenforceable. Also, we are not convinced that the PPI Act was ever meant to supersede the preexisting statutes.
The construction of two statutes shall be made with the assumption that the Legislature does not intend to create an inconsistency. State v. Bash, 130 Wash.2d 594, 602, 925 P.2d 978 (1996). Statutes are to be read together, whenever possible, to achieve a "`harmonious total statutory scheme ... which maintains the integrity of the respective statutes.'" Employco Personnel Servs., Inc. v. City of Seattle, 117 Wash.2d 606, 614, 817 P.2d 1373 (1991) (quoting State v. O'Neill, 103 Wash.2d 853, 862, 700 P.2d 711 (1985)). The PPI Act allows for the selection of "demonstration projects." Details about the specific projects are not included in the PPI Act. Because the PPI Act does not contain any project specifics that violate existing state law, the PPI Act itself is not inconsistent with the statutory scheme created by RCW 47.56.270 and .271. The definitive issue is whether the agreement violates existing law, thus causing the agreement to be unenforceable.
WSDOT argues that other state law does not preclude it from building new toll facilities. WSDOT maintains that the purpose of RCW 47.56.270 and .271 was to ensure that after the bonds were paid off the state would not continue to collect tolls to pay for maintenance and operation of the bridge or to create a revenue source for the state. In support of this, WSDOT claims that "RCW 47.56.271 does not prohibit WSDOT from undertaking a new project that will be financed through tolls; it merely prohibits WSDOT from reimposing tolls on the existing facility for the purpose of generating revenue for operation and maintenance in the absence of a new construction project." Br. of Resp. at 26-27.
We do not find this argument compelling. RCW 47.56.270 and .271 address present bonded indebtedness and future operation and maintenance of the existing Tacoma Narrows bridge. The statutes do not address future debt incurred to finance future capital improvements. In RCW 47.56.271 the Legislature specifically excluded the existing Tacoma Narrows bridge from RCW 47.56.245 (enacted in 1961), thus requiring that tolls be removed without the state recouping its project development costs for the bridge. Additionally, the new bridge is not being proposed under chapter 47.58 RCW, so this statute allowing additional bridges to be built and paid for by tolling the existing bridge and the new bridge does not apply in this context. Nothing in this statutory scheme indicates that the Legislature intended for a toll to be reimposed on the existing bridge to help finance the construction of a new bridge.
The agreement provides for tolling of the existing bridge and therefore violates the prohibition on tolls specified in RCW 47.56.271. The statute states that the bridge will be "operated and maintained" as a toll-free facility. RCW 47.56.271. Because the agreement allows for the imposition of a "round trip" toll rate that is set, adjusted, and retained by WSDOT, it violates the statutory mandate that the existing Tacoma Narrows bridge be toll free.[3] The agreement allows the developer to elect to install and operate two-way electronic tolling. Clerk's Papers at 704; Agreement at Section 8.4(b). As such, the agreement permits tolling of the existing bridge. Therefore, the agreement allowing for the imposition of a toll to finance future capital improvements is not enforceable because it violates the prohibition on tolls specified in RCW 47.56.271.
*143 WSDOT goes on to argue that the PPI Act, recent amendments to the PPI Act, and legislative appropriations are evidence of the legislative intent to supersede RCW 47.56.271 to the extent it is in conflict with the PPI Act. WSDOT claims that the Legislature amended the PPI Act twice with knowledge of the selection of this project and without any objection to the selection of this project. The 1996 amendment was contained in a bill with the heading of "Tacoma Narrows BridgeImprovementsAdvisory Vote." Laws of 1996, ch. 280. The Legislature has also passed appropriations specifically for the new bridge project. Section 219(9) of the 1999-2001 transportation budget included an appropriation of $50 million "as a cash contribution for the development of the public private initiatives project at Tacoma Narrows." Laws of 1999, 1st Ex. Sess., ch. 1, 219(9). WSDOT claims this demonstrates that the Legislature approved of the new bridge project and was fully aware that private bonds, which would be repaid by tolls, would finance it. However, the agreement was not signed and made public until June 15, 1999. The appropriations bills predate the agreement. Because the agreement was not entered into prior to these legislative actions, we find no evidence of legislative intent to supersede RCW 47.56.271.
An additional argument was raised with regard to the PPI Act implicitly repealing RCW 47.56.271. But as PNA argues, the PPI Act does not meet the "implicit repealer" test because it is not (1) "`evidently intended to supersede the prior legislation'" on the existing Tacoma Narrows bridge, nor is it (2) "`so clearly inconsistent with, and repugnant to'" the earlier acts because they can be reconciled and both given effect. Wash. Fed'n of State Employees v. Office of Fin. Mgmt., 121 Wash.2d 152, 165, 849 P.2d 1201 (1993) (quoting Abel v. Diking & Drainage Imp. Dist. 4, 19 Wash.2d 356, 363, 142 P.2d 1017 (1943)). The PPI Act makes no specific reference to the proposed Tacoma Narrows bridge, and more importantly, makes no reference to the existing Tacoma Narrows bridge. Nothing in the statute indicates it is meant to supersede or implicitly repeal RCW 47.56.270 and .271. Both RCW 47.56.271 and the PPI Act can be given effect because they do not conflict with each other. However, to the extent the agreement for the new bridge is inconsistent with RCW 47.56.270 and .271, it cannot be given effect because it goes beyond WSDOT's statutory authority. WSDOT does not have the authority to repeal or supersede a statute by agreement with a private entity.
Even if the existing Tacoma Narrows bridge were allowed to have a toll reimposed, WSDOT still exceeded its statutory authority by entering into an agreement authorizing a private entity to determine the toll rate on the existing bridge. RCW 47.56.240 states that it is the transportation commission that is "empowered to fix the rates of toll and other charges for all toll bridges built under the terms of this chapter." The existing bridge was built pursuant to the terms of this chapter and therefore it is the transportation commission that is permitted to set toll rates, not a private entity contracting with WSDOT. To the extent the agreement allows the private entity to establish toll rates on the existing bridge, WSDOT has exceeded its statutory authority.
Moreover, WSDOT exceeded its statutory authority to the extent the agreement allows for tolls to pay for the operation and maintenance of the existing bridge.[4] The agreement requires that the total revenues be applied to the maintenance, upkeep, and repair of both bridges. Clerk's Papers at 697-98; Agreement at Sections 8.2(c)(ii)(C) and 8.2(d)(ii)(B). RCW 47.56.270 states that maintenance and operation is to be done from WSDOT highway funds. As a result, the agreement violates the statute *144 stating the existing bridge will be operated and maintained as a toll-free facility.
Because the agreement allows for tolling of the existing bridge, it violates state law that requires the existing Tacoma Narrows bridge to be a toll-free facility. The agreement also violates state law by allowing a private entity instead of the transportation commission to fix toll rates as required by RCW 47.56.240. Additionally, the agreement violates the requirement that the existing bridge be operated and maintained with WSDOT highway funds. For these reasons we hold that the agreement is unenforceable.

CONCLUSION
We conclude that the PPI Act is a constitutional delegation of authority to both identify toll bridges and set toll rates. PNA did not sustain its burden in proving the unconstitutionality of the PPI Act beyond a reasonable doubt. The PPI Act contains sufficient standards and guidelines as well as procedural safeguards to satisfy the constitutional challenge. Because PNA delayed challenging the adoption of the amended rules, its claim is barred by laches. Substantial prejudice and disadvantage would result if PNA's claim were allowed to go forward because the results of the advisory election were relied upon. The PPI Act and RCW 47.56.270 and.271 are not in conflict. However, the agreement entered into under the authority of the PPI Act violates these existing state laws. Therefore, as currently written and with current laws in place, the agreement is unenforceable.
We affirm the trial court's ruling and hold that the PPI Act is constitutional. Additionally, we affirm the trial court's ruling that the claim challenging the validity of the advisory election and the rules adopted to implement the PPI Act is barred by laches. Because the claim is barred, the rules and advisory election are valid. Finally, we reverse the trial court's ruling with regard to the agreement and hold that the agreement violates existing state law and is therefore unenforceable.
SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, IRELAND, and BRIDGE, JJ., concur.
SANDERS, J., concurs in result.
NOTES
[1] PNA argues that the PPI Act illegally delegates authority to set toll rates because there are no procedural protections for consumers and the standard enunciated in the statute is not being used in the agreement. We do not find this argument persuasive because what is contained in the actual agreement does not impact the constitutionality of the PPI Act. The fact that the agreement may not contain that which is required by the PPI Act affects whether or not the agreement is valid, not whether the PPI Act is constitutional.
[2] RCW 47.56.245 Toll charges retained until costs paid states:

The department shall retain toll charges on all existing and future facilities until all costs of investigation, financing, acquisition of property, and construction advanced from the motor vehicle fund, and obligations incurred under RCW 47.56.250 and chapter 16, Laws of 1945 have been fully paid. With respect to every facility completed after March 19, 1953, costs of maintenance, management, and operation shall be paid periodically out of the revenues of the facility in which such costs were incurred.
[3] The term "round trip" is the term used in the official project description that appeared in the voter's pamphlet of the seven counties participating in the advisory election held on November 3, 1998. Clerk's Papers at 112-13, 237-38.
[4] The agreement at Section 8.2(c) provides:

(i) Performance of operations and maintenance.
(A) WSDOT shall operate and maintain the existing bridge from the Agreement Date until commencement of tolling ... and
(B) Developer shall operate and maintain the existing bridge (including both the Existing Transportation Facilities and New Transportation Facilities constituting the existing bridge) at all times from the commencement of tolling through the end of the Term.