[No. 45353. En Banc. November 15, 1979.]

THE STATE OF WASHINGTON, *Appellant,* v. CROWN ZELLERBACH CORPORATION, *Respondent.*

896

Slade Gorton, Attorney General, Bryan L. Fischnaller and James Johnson, Assistants, and Guy Glenn, Prosecuting Attorney, for appellant.

Studley, Purcell, Spencer, Guinn & Roesch and Vernon J. Guinn, for respondent.

WILLIAMS, J.—The State of Washington appeals from an order entered by the trial court dismissing a criminal information filed against respondent Crown Zellerbach Corporation. The information was filed as a result of respondent's alleged noncompliance with conditions contained in a permit for a hydraulic project issued by the Department of Fisheries and Department of Game pursuant to RCW 75.20.100.[1] We reverse.

---

[1]RCW 75.20.100 provides, in part, as follows:

"In the event that any person or government agency desires to construct any form of hydraulic project or other work that will use, divert, obstruct, or change the natural flow or bed of any river or stream or that will utilize any of the waters of the state or materials from the stream beds, such person or government agency shall submit to the department of fisheries and the department of game full plans and specifications of the proposed construction or work, complete plans and specifications for the proper protection of fish life in connection therewith, the approximate date when such construction or work is to commence, and shall secure the written approval of the director of fisheries and the director of game as to the adequacy of the means outlined for the protection of fish life in connection therewith and as to the propriety of the proposed construction or work and time thereof in relation to fish life, before commencing construction or work thereon. The director of fisheries and the director of game shall designate and authorize certain employees of their respective departments to act in place of themselves by signing written approvals for such designations and authorizations. If any person or government agency commences construction on any such works or projects without first providing plans and specifications subject to the approval of the

On June 22, 1976, a Department of Game hydraulic investigator met informally with representatives of Crown Zellerbach, a representative from the Department of Natural Resources, and a contract logger to discuss and review proposed logging at a Crown Zellerbach logging site on timberland owned by respondent on Williams Creek in Pacific County. At this meeting, the Department of Game representative informed respondent's representatives that a hydraulic project approval permit would be required from the Departments of Fisheries and Game for that portion of the proposed logging operation where logs were to be brought across the creek or removed from the creek itself.

Following this meeting, a Department of Game hydraulic investigator drafted the provisions of a hydraulic project approval permit dated June 28, 1976. Its provisions encompassed the measures discussed at the meeting, which were considered to be necessary to protect fish habitat in Williams Creek, and were designed in view of the work to be performed, the logging equipment to be used, and the nature of the terrain at the logging site. The drafting of such provisions is performed by various representatives and inspectors within the state.

The permit provisions were reviewed and approved on or about June 30, 1976, by a person designated by the director of the Department of Fisheries and a person designated by the director of the Department of Game to perform such functions. The appropriate employees of respondent

---

director of fisheries and the director of game for the proper protection of fish life in connection therewith and without first having obtained written approval of the director of fisheries and the director of game as to the adequacy of such plans and specifications submitted for the protection of fish life, or if any person or government agency fails to follow or carry out any of the requirements or conditions as are made a part of such approval, he is guilty of a gross misdemeanor. If any such person or government agency be convicted of violating any of the provisions of this section and continues construction on any such works or projects without fully complying with the provisions hereof, such works or projects are hereby declared a public nuisance and shall be subject to abatement as such. For the purposes of this section, "bed" shall mean that portion of a river or stream and the shorelands within the ordinary high water lines."

received the permit and understood the purpose of its provisions prior to the commencement of the logging operation.

The hydraulic project approval permit was processed by employees of the Departments of Fisheries and Game who exercised independent discretion as to the general, special, and technical provisions necessary to insure the proper protection of fish life. In order to facilitate the processing of approximately 3,000 permit applications that are received by the Departments of Fisheries and Game annually, the directors of those departments have by policy agreed to employ standardized language to the extent possible for the general, technical, and special provisions of the hydraulic project permits.

The standard provisions were adopted by policy of the directors of the Departments of Fisheries and Game after public hearings in December 1971 to serve as a guide to the departments' hydraulic investigators and biologists. The special and technical provisions are tailored with the intent to fit the particular project and fish resource needs. The appropriate standardized technical provisions, with minor variation, generally remain the same for hydraulic projects. Standardized special provisions frequently are altered or new ones are written, as in the instant case, to fit a particular project. None of the provisions have been formally adopted and promulgated by either department as regulations under the Washington Administrative Code.

Subsequent to the issuance of the permit, timber was removed from the site by respondent and its contract logger. After completion of the project, representatives from the departments investigated the site. Thereafter, the prosecuting attorney for Pacific County filed an amended information based on alleged noncompliance with the permit's conditions.

The trial court granted respondent's motion to dismiss on the grounds that RCW 75.20.100 constitutes an unconstitutional delegation of legislative power, and the conditions contained in the permit were not properly adopted

and promulgated by the departments. We reverse on both grounds.

Respondent first contends that RCW 75.20.100 makes no delegation of authority which allows the departments to impose requirements or conditions on permits. It argues that no such grant is created by that portion of the statute which declares it a gross misdemeanor to fail to follow or carry out any of the requirements or conditions which are made a part of a hydraulic permit.

■■ The statute clearly authorizes employees of the Departments of Fisheries and Game to sign on behalf of the departments written approvals of plans and specifications of proposed hydraulic projects. Even if the grant of authority to impose conditions on such permits is not expressly stated, we find that it is implied.

In *State ex rel. Puget Sound Navigation Co. v. Department of Transp.*, 33 Wn.2d 448, 206 P.2d 456 (1949), this court recognized that the power to disapprove necessarily implies the power to condition an approval. In that case, the authority of the Department of Transportation to control rates under Rem. Supp. 1941, § 10424 was recognized. Accordingly, the court held that the power vested in the department to refuse to allow a new tariff filed by a common carrier to become effective necessarily implies the power to allow the tariff to become immediately effective pursuant to reasonable conditions or limitations. This approach is consistent with that taken by the United States Supreme Court when it interpreted an act of Congress giving the Secretary of War the authority to approve construction of any obstruction for a navigable waterway. *Southern Pac. Co. v. Olympian Dredging Co.*, 260 U.S. 205, 67 L. Ed. 213, 43 S. Ct. 26 (1922). The court stated, at page 208: "The power to approve implies the power to disapprove and the power to disapprove necessarily includes the lesser power to condition an approval." We find this reasoning to be applicable to the statute in question.

We therefore hold that the departments have been delegated the authority to impose requirements or conditions on permits.

■■ Respondent next contends that the statute does not meet the criteria for lawful delegation as set forth in *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 500 P.2d 540 (1972). The delegation of legislative power is justified: (1) when it can be shown that the legislature has provided standards which in general terms define what is to be done and the administrative body which is to do it, and (2) when procedural safeguards exist to control arbitrary administrative action and abuse of discretionary power. *See also Polygon Corp. v. Seattle,* 90 Wn.2d 59, 578 P.2d 1309 (1978), and *Lindsay v. Seattle,* 86 Wn.2d 698, 548 P.2d 320 (1976). We hold that RCW 75.20-.100 satisfies all of the elements set forth in this test.

First, the statute does define in general terms what is to be done, as stated in the following language:

[S]uch person or government agency shall . . . secure the written approval of the director of fisheries and the director of game *as to the adequacy of the means outlined for the protection of fish life* in connection therewith and *as to the propriety of the proposed construction or work and time thereof in relation to fish life,* before commencing construction or work thereon.

(Italics ours.) RCW 75.20.100.

We find these general standards to be adequate, particularly in light of our stated view that environmental factors are not readily subject to standardization or quantification. *See Polygon,* at 66, 69.

The statute clearly indicates which administrative bodies are to act. Furthermore, the statute contains an express authorization for the directors of the Departments of Fisheries and Game to delegate their responsibilities under the act to certain other employees.

Second, we find that the statute provides sufficient procedural safeguards. Although no procedural safeguards are

expressly indicated within the section, the safeguards contained in the administrative procedures act, RCW 34.04, are applicable to any proceeding arising under RCW 75.20-.100. *See Rains v. Department of Fisheries,* 89 Wn.2d 740, 575 P.2d 1057 (1978). Therefore, an applicant seeking a hydraulic permit under RCW 75.20.100 is entitled to a "second look" at agency action through administrative channels. *Rains,* at 743. An aggrieved applicant is also entitled to judicial review under the clearly erroneous standard as provided by RCW 34.04.130. These statutory safeguards are available as a check on the action by the administrative agency prior to the institution of any criminal proceedings. If a criminal prosecution should arise for an alleged failure to obtain or, as in this case, to carry out the terms of a hydraulic permit pursuant to RCW 75.20.100, a second set of procedural safeguards would come into play. The defendant in such actions is entitled to all of the statutory and common–law procedural safeguards which are normally afforded a defendant in a criminal prosecution.

Because this statute sets forth adequate standards for the specified agencies and extends sufficient procedural safeguards, we hold that it meets the criteria of the *Barry & Barry* test for lawful delegation.

Respondent further attacks RCW 75.20.100 on the ground that it constitutes an unlawful delegation of the legislature's power to define crimes. If an administrative agency may in its sole and unrestricted discretion define the crime or impose the penalty, there is an unlawful delegation of the legislature's power to define crimes. *United States Steel Corp. v. State,* 65 Wn.2d 385, 397 P.2d 440 (1964).

The challenged statute in *United States Steel* provided, at page 387, that the Tax Commission "*may add . . . interest*" on taxes due, the statute having been amended from its original version, which stated "*shall* add . . . interest". This change in wording placed the imposition of the penalty at the sole and unrestricted discretion of an administrative body, rendering it an invalid delegation. The

question becomes whether RCW 75.20.100, in authorizing the department to issue permits, places with the department the sole and unrestricted discretion to define a crime or impose a penalty.

We are unaware of any state or federal case which deals with the precise issue at hand.

Under federal law it is well settled that the legislature may authorize an administrator to adopt regulations, and the legislature may provide that any violation of such regulations will be a crime. *United States v. Grimaud,* 220 U.S. 506, 55 L. Ed. 563, 31 S. Ct. 480 (1911). *See Rody v. Hollis,* 81 Wn.2d 88, 500 P.2d 97 (1972). *See also* Gellhorn, *Administrative Prescription and Imposition of Penalties,* 1970 Wash. U.L.Q. 265.

 We find the reasoning of *Grimaud* to be applicable to the present statutory and regulatory scheme. We limit our adoption of the *Grimaud* reasoning to the situation in which the penalty for noncompliance with an agency's permit is limited to a gross misdemeanor. The court stated in *Grimaud:*

> A violation of reasonable rules . . . is made a crime, not by the Secretary, but by Congress. The statute, not the Secretary, fixes the penalty.

*Grimaud,* at 522.

The statute which is presently under attack, unlike the one in *United States Steel,* does not place the creation of a crime or imposition of a penalty at the discretion of an administrative body. Rather, RCW 75.20.100 states that if a person fails to seek a permit or carry out the requirements or conditions of a permit, "he is guilty of a gross misdemeanor". To apply the reasoning of *Grimaud* to this situation, the proscribed criminal act is defined by the legislature within the statute. Therefore, we do not find that the legislature has delegated its authority to define crimes by its enactment of RCW 75.20.100.

Similarly, we do not find, as is argued by respondent, that this statute violates equal protection by defining criminal conduct on a case–by–case basis. As we have indicated,

the only acts which are made punishable by RCW 75.20.100 are set out within the statute, *i.e.,* the failure to obtain a permit before engaging in a hydraulic project or the failure to follow the conditions of such a permit. The prohibition is a general law for which all are accountable. The terms of permits may vary, but the prohibition as defined in the statute applies uniformly to all. It should be noted that respondent has not challenged on equal protection grounds the actual permitting process. *See State ex rel. Standard Mining & Dev. Corp. v. Auburn,* 82 Wn.2d 321, 510 P.2d 647 (1973).

Turning to the second ground upon which the trial court dismissed the information, we hold that the failure of the Departments of Fisheries and Game to promulgate rules and regulations as to the conditions and requirements attached to permits was not a proper ground for dismissing the information filed in this case.

The promulgation of rules and regulations is a valuable safeguard against arbitrary and unreasonable administrative action. 1 K. Davis, *Administrative Law Treatise* § 3:15 (2d ed. 1978). However, at no point has the respondent challenged the reasonableness of the terms of the permit or asserted arbitrary agency action. Therefore, the failure of the departments to promulgate rules and regulations relative to their authority to impose conditions upon permits cannot be dispositive of this case. We cannot say, however, that the failure of the departments to issue rules and regulations on this subject would not affect the outcome of a different case arising under RCW 75.20.100. We therefore suggest that the departments take steps to promulgate rules and regulations regarding requirements and conditions which may be imposed as terms of a hydraulic permit. *See Dunaway v. Department of Social & Health Servs.,* 90 Wn.2d 112, 579 P.2d 362 (1978).

The order of dismissal of the trial court is reversed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

STAFFORD, J. (concurring)—Fair notice of proscribed criminal conduct is not involved in the instant case. Rather, the question is whether the legislature, having defined the crime and set the penalty for noncompliance with a permit, may delegate to an administrative agency the power to designate the conditions of that permit. In the instant case we have held the legislature did not exceed its power.

It is conceivable some of the language in *In re Powell,* 92 Wn.2d 882, 602 P.2d 711 (1979), which in turn cites *State v. Jordan,* 91 Wn.2d 386, 588 P.2d 1115 (1979) and *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977), might cause one to misread the instant majority opinion. Primarily *Dougall* is concerned with the requisites of providing proper "notice" of proscribed criminal conduct. *Jordan* deals with the requisite of providing "fair notice" of proscribed criminal conduct and the need to clearly designate those agencies to which authority has been delegated. Essentially *Powell, Jordan* and *Dougall* are "notice" cases. They are not concerned with the legislature's power to delegate authority to administrative agencies or the extent of that power.

BRACHTENBACH, J., concurs with STAFFORD, J.