[No. 28654-8-II.   Division Two.   July 15, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH GOODRICH SIMMONS, JR., *Appellant*.

*Stephanie D. Carter*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Krista K. Bush* and *Kasey C. Myhra, Assistants*, for respondent.

SEINFELD, J. — The State charged Joseph Simmons, Jr. with persistent prison misbehavior, a violation of RCW 9.94.070. After denying Simmons' motion to dismiss, the court found him guilty as charged. Holding that RCW 9.94.070 is neither void as an unconstitutional delegation of legislative authority nor violative of equal protection, we affirm.

## FACTS

While confined at McNeil Island Corrections Center for an offense committed after August 1, 1995, Simmons committed 46 infractions of prison rules. This cost him all his potential earned early release time credits.

In December 2001, a month before his release date, he knowingly damaged a fire sprinkler in his cell and knowingly flooded his cell and the adjoining areas. The flooding constituted a serious infraction of prison rules under Washington Administrative Code (WAC) 137-28-260(720).

The State charged Simmons for this conduct with one count of persistent prison misbehavior, a class C felony under RCW 9.94.070. Simmons moved to dismiss, arguing that RCW 9.94.070 unconstitutionally delegates legislative authority to the Department of Corrections (DOC) and violates equal protection. For authority, he cited *State v. Brown*, 95 Wn. App. 952, 977 P.2d 1242 (1999), *aff'd*, 142 Wn.2d 57, 11 P.3d 818 (2000) (*Brown* I), an opinion from Division Three of this court.

The trial court denied the motion, ruling that as the Supreme Court had affirmed *Brown* I on grounds other than improper delegation of authority, *Brown* I did not control in this case. *See State v. Brown*, 142 Wn.2d 57, 62-63, 11 P.3d 818 (2000) (*Brown* II). Following a trial on stipulated facts, the trial court found Simmons guilty as charged.

Simmons appeals, again asserting that RCW 9.94.070 is unconstitutional.

## DISCUSSION

### I. PERSISTENT PRISON MISBEHAVIOR

A person who has lost all potential earned early release time credit and knowingly commits a serious infraction while serving a sentence for an offense committed on or after August 1, 1995, is guilty of persistent prison misbe-

havior. RCW 9.94.070(1).[1] A serious infraction is "misconduct that has been designated as a serious infraction by department of corrections rules adopted under RCW 72.09.130." RCW 9.94.070(2). Flooding a cell or other area of an institution is a serious infraction. WAC 137-28--260(720).

Inmates who do not comply with internal prison rules can lose potential earned early release time/good time credit. *Brown* II, 142 Wn.2d at 60. The legislature enacted RCW 9.94.070 in 1995 in response to DOC's concern about maintaining discipline over inmates who have no credit to lose and, thus, have less incentive to follow prison rules. *Brown* II, 142 Wn.2d at 60.

But after the legislature passed RCW 9.94.070 in 1995, DOC failed to adopt rules designating certain conduct as a serious infraction pursuant to RCW 72.09.130. *Brown* II, 142 Wn.2d at 61. Instead, DOC continued to administer its disciplinary code, chapter 137-28 WAC, including its serious infraction rules, under its general grant of powers, RCW 72.01.090. *Brown* II, 142 Wn.2d at 61. In *Brown* II, the Washington Supreme Court held that because of this failure, the State could not prosecute Brown for persistent prison misbehavior; thus, it affirmed the trial court's dismissal of the charge. 142 Wn.2d at 61-63.

In 1998, DOC complied with RCW 9.94.070 by repromulgating chapter 137-28 WAC under the authority of that statute, RCW 72.01.090, and RCW 72.09.130. WAC 137-28-150. DOC also began providing notice to inmates that commission of a serious infraction can lead to felony prosecution:

When an offender knowingly commits an additional serious infraction after losing all potential earned early release time

[1] RCW 9.94.070(1) provides:

An inmate of a state correctional institution who is serving a sentence for an offense committed on or after August 1, 1995, commits the crime of persistent prison misbehavior if the inmate knowingly commits a serious infraction, that does not constitute a class A or class B felony, after losing all potential earned early release time credit.

credits, the superintendent will report that offender to local law enforcement authorities for possible felony prosecution under RCW 9.94.070.

WAC 137-28-190(2). But in reviewing *Brown* I, the Supreme Court did not consider the adequacy of the new regulations because DOC had promulgated them after the State had filed the charge against Brown. *Brown* II, 142 Wn.2d at 62 n.3.

## II. UNCONSTITUTIONAL DELEGATION OF LEGISLATIVE AUTHORITY

### A. Controlling Authority

The *Brown* I court held that RCW 9.94.070 is unconstitutional because it does not contain adequate safeguards to control arbitrary administrative action. 95 Wn. App. at 961. The Washington Supreme Court "affirm[ed] the result on more narrow grounds," holding that DOC erred by failing to promulgate its serious infraction rules under RCW 72-.09.130 following enactment of RCW 9.94.070. *Brown* II, 142 Wn.2d at 59, 61. Because it resolved the case on nonconstitutional grounds, the court did not reach the issue of whether the statute was an unconstitutional delegation of power.[2] *Brown* II, 142 Wn.2d at 63 n.4.

The *Brown* I decision that RCW 9.94.070 is an unconstitutional delegation of power is not binding authority on this court; it is merely persuasive authority. And the Supreme Court did not reach the issue. *Brown* II, 142 Wn.2d at 63 n.4. Thus, we examine whether RCW 9.94.070 is an unconstitutional delegation of authority as an open question.

### B. Adequate Procedural Safeguards

Simmons first argues that RCW 9.94.070 lacks adequate safeguards against arbitrary administrative actions.

---

[2] Justice Talmadge argued in his dissent that the Supreme Court should find RCW 9.94.070 constitutional and reverse Division Three's holding that RCW 9.94.070 was an unconstitutional delegation of legislative power. *State v. Brown*, 142 Wn.2d 57, 63, 11 P.3d 818 (2000) (concurred in by Justices Bridge and Ireland).

■ We presume that statutes are constitutional. *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997). The party challenging a statute's constitutionality has the burden to demonstrate its unconstitutionality beyond a reasonable doubt. *Blank*, 131 Wn.2d at 235.

■ The legislature may delegate legislative power if (1) it provides standards that in general terms define what is to be done and the administrative body that is to do it; and (2) procedural safeguards exist to control arbitrary administrative action and abuse of discretionary power. *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 900, 602 P.2d 1172 (1979) (citing *Barry & Barry, Inc. v. Dep't of Motor Vehicles*, 81 Wn.2d 155, 500 P.2d 540 (1972)). Here, RCW 9.94.070 satisfies the first prong by instructing DOC to adopt rules that designate the types of misconduct that constitute serious infractions. RCW 9.94.070(2). And RCW 72.09.130 provides guidance on how DOC is to adopt a disciplinary system by rule.

In examining the second prong, the sufficiency of procedural safeguards, we use the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). *Morris v. Blaker*, 118 Wn.2d 133, 144-45, 821 P.2d 482 (1992) (concept of due process is flexible and calls for procedural protections). This test requires balancing (1) the private interest to be protected, (2) the risk of erroneous deprivation of that interest by the government's procedures, and (3) the government's interest in maintaining the procedures. *Morris*, 118 Wn.2d at 144-45.

The private interest here is the inmate's right to adequate procedural safeguards before being subjected to a felony prosecution. The process DOC followed in adopting its rules minimized the risk of an intrusion into that interest.

DOC's rule-making process provided for public scrutiny and judicial review similar to that available for legislatively enacted statutes. *In re Pers. Restraint of Powell*, 92 Wn.2d 882, 891, 602 P.2d 711 (1979) (citing *Barry & Barry*, 81 Wn.2d at 163-64)). RCW 9.94.070(2) requires DOC to des-

ignate serious infractions under RCW 72.09.130, which in turn directs DOC to adopt by rule an incentive system that links inmate behavior with the receipt of earned early release days.

Although DOC is exempt from the Administrative Procedure Act's (APA) rule-making requirements, RCW 34.05-.030(1)(c), DOC nonetheless chose to follow those requirements when it promulgated rules designating the infractions listed in chapter 137-28 WAC as serious infractions under RCW 72.09.130.[3] As part of the rule-making process, DOC provided notice of proposed amendments, requested public comment, conducted a hearing on the amendments, and published the proposed amendments in the Code Reviser's Office.

DOC further minimized the risk of depriving Simmons of adequate procedural safeguards by advising him upon his admission to custody of his right to view the disciplinary code. The code contained notice that serious infractions could lead to felony prosecution. DOC also provided Simmons with the right to appeal disciplinary hearing findings to the prison superintendent, and the right to judicial review of disciplinary action taken against him. *See* WAC 137-28-190(2); WAC 137-28-380(1). And he had all the procedural safeguards inherent in a criminal trial. *See* RAP 16.4; *see also In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999); *In re Pers. Restraint of Arseneau*, 98 Wn. App. 368, 371, 989 P.2d 1197 (1999).

The situation here is distinguishable from both *Brown* I and *Powell*. The disciplinary code reviewed in *Brown* I did

---

[3] Under WAC 137-28-185, creation or amendment of serious infractions, DOC must follow APA rule-making procedures for future amendments to serious infractions or creation of new serious infractions:

(1) The secretary or designee may create and/or amend serious infractions.

(2) Prior to the creation or amendment of a serious infraction, the secretary or designee shall follow the rule-making procedures of chapter 34.05 RCW, the Administrative Procedure Act.

(3) Nothing herein shall be construed as limiting the department of corrections' exclusion from the Administrative Procedure Act under RCW 34.05.030(1)(c).

This section became effective in June 2000.

not provide notice that commission of serious infractions could lead to felony prosecution. 95 Wn. App. at 959. Nor had DOC provided notice of the proposed rules, requested public comment, or conducted a hearing on the rules, as it did before promulgating the rules that applied to Simmons. *See Brown* II, 142 Wn.2d at 61.

And similarly, in *Powell*, there was a lack of procedural safeguards. 92 Wn.2d at 893. There, the legislature had delegated the authority to promulgate rules that supply the elements of felonies under the Uniform Controlled Substances Act, chapter 69.50 RCW, to the State Board of Pharmacy. *Powell*, 92 Wn.2d at 885. Without providing notice or allowing for public comment, the Board of Pharmacy promulgated a regulation under emergency procedures that designated a drug as a controlled substance. *Powell*, 92 Wn.2d at 893. The *Powell* court found that the statute unlawfully delegated authority because procedural safeguards were almost nonexistent. 92 Wn.2d at 885, 893.

By contrast, the Supreme Court in *Crown Zellerbach* upheld the legislature's delegation of authority to the Departments of Fisheries and Game to impose requirements on permits. 92 Wn.2d at 899. There, the statute did not expressly indicate procedural safeguards; nor had the permit condition been developed through APA rulemaking. *Crown Zellerbach*, 92 Wn.2d at 900-01, 903. Nonetheless, the Supreme Court held that the statutory and common law procedures available to defendants in their criminal appeals, as well as the availability of an APA appeal, provided sufficient safeguards against arbitrary and unauthorized agency action. *Crown Zellerbach*, 92 Wn.2d at 901. Those protections included entitlement to a second look at agency action, judicial review, and, if criminal proceedings arose, defendants had the statutory and common law procedural safeguards provided to defendants in criminal prosecutions. *Crown Zellerbach*, 92 Wn.2d at 901.

Here, although RCW 9.94.070 and RCW 72.09.130 do not require DOC to follow the APA rule-making procedures, DOC did so when it repromulgated its disciplinary code.

Because of the presence of the procedural safeguards that we discussed above, we conclude that Simmons has not met his burden of demonstrating the statute's unconstitutionality beyond a reasonable doubt. *Blank*, 131 Wn.2d at 235.

III. EQUAL PROTECTION AND PRIVILEGES AND IMMUNITIES CLAUSES

Simmons also contends that RCW 9.94.070 violates the equal protection guaranties of the federal and Washington constitutions and Washington's privileges and immunities clause.[4] He claims that the statute is not rationally related to the legitimate purpose of maintaining prison discipline because it treats inmates differently depending on their sentences and the amount of potential earned early release credit available to them.

Equal protection requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12; *State v. Coria*, 120 Wn.2d 156, 169, 839 P.2d 890 (1992). "Equal protection does not require that all persons be dealt with identically, but it does require that the distinction made have some relevance to the purpose for which the classification is made." *In re Pers. Restraint of Stanphill*, 134 Wn.2d 165, 174, 949 P.2d 365 (1998).

As Simmons does not assert that Washington's privileges and immunities clause provides greater protection in this case, we analyze RCW 9.94.070 under equal protection jurisprudence. *1519-1525 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 144 Wn.2d 570, 576-77, 29 P.3d 1249 (2001) (plaintiff asserted violations of federal equal protection clause and state privileges and immunities clause but did not seek an independent state constitutional analysis; thus, court scrutinized the statute under equal protection analysis). The first step in equal protection analysis is to determine the appropriate standard of review.

---

[4] The Washington privileges and immunities clause provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." WASH. CONST. art. I, § 12.

*Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 145 Wn.2d 702, 719, 42 P.3d 394 (2002).

■ Simmons does not claim that the strict scrutiny or intermediate scrutiny standards apply. *See City of Moses Lake*, 145 Wn.2d at 719 (strict scrutiny applies if the classification involves a suspect class or infringes on fundamental rights). Further, as inmates in legal custody after a judgment and sentence have only a conditional liberty interest, we apply the rational relationship test. *In re Pers. Restraint of Whitesel*, 111 Wn.2d 621, 634, 763 P.2d 199 (1988).

■ Under the rational relationship test, we ask whether: (1) the governmental action applies alike to all members within the designated class, (2) there are reasonable grounds to distinguish between those within and those without the class, and (3) the classification has a rational relationship to the legislative purpose. *Convention Ctr. Coalition v. City of Seattle*, 107 Wn.2d 370, 378-79, 730 P.2d 636 (1986). Applying this standard, we presume that the governmental action is constitutional " 'unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives.' " *Tunstall v. Bergeson*, 141 Wn.2d 201, 226, 5 P.3d 691 (2000) (quoting *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993)). We look for any conceivable state of facts that might reasonably justify the classification. *Tunstall*, 141 Wn.2d at 226.

Simmons concedes that RCW 9.94.070 has a legitimate governmental purpose of maintaining prison security. But he claims that the classification is not rationally related to the legitimate governmental purpose, arguing that inmates who have longer sentences may commit a greater number of serious infractions before risking felony exposure compared to those with shorter sentences. He also notes that the statute lacks deterrence for inmates serving life sentences without the possibility of release. The State responds that the statute is not irrational merely because some offenders may lose their earned time credits more quickly than others, thus, risking felony prosecution earlier.

■ ■ The purpose of RCW 9.94.070 is to aid in maintaining discipline over inmates who, because they have no potential earned early release credit, cannot be motivated to obey internal prison rules by the possible loss of credit. *See Brown* II, 142 Wn.2d at 60. Treating these inmates differently from inmates who have potential earned early release credits is justified. Because the latter face the loss of credit if they commit infractions, they have an incentive to follow prison rules and are less in need of the additional motivation of felony criminal sanctions. *See* RCW 72.09.130; *Brown* II, 142 Wn.2d at 60. Thus, RCW 9.94.070 is rationally related to maintaining prison discipline despite its inability to deter inmates serving mandatory life sentences from disobeying prison rules. *Coria,* 120 Wn.2d at 173 (the rational basis test requires only that the statute's means is rationally related to its goal, not that the means is the best way of achieving that goal).

Simmons also contends that hearing officers lack guidance in determining the amount of potential earned early release credits to take away for a given infraction. But the State responds that DOC policy provides guidance, and Simmons did not submit a reply brief to dispute this. Thus, we accept the State's argument on this point.

As Simmons has not met his burden of showing that RCW 9.94.070 is irrelevant to the goal of maintaining prison order or that it creates an arbitrary classification, his equal protection claim fails.

Accordingly, we affirm.

HUNT, C.J., and HOUGHTON, J., concur.

Review granted at 151 Wn.2d 1001 (2004).