**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| ANDREA SEHMEL, KEVIN O'SULLIVAN, ROBERT MOTZER, DAWN APPELBERG, KENNETH MORSE, JEREMY WILDHABER, YIENAN SONG, as individuals, | No.  55970-6-II |
| Appellants, | |
| v. | PUBLISHED  OPINION |
| UMAIR A. SHAH, in his official capacity as Secretary of Health of the State of Washington, | |
| Respondent. | |

WORSWICK, J. — Appellants seek to invalidate the secretary of health's order mandating every person in Washington State to wear a mask indoors and in certain large outdoor settings. Appellants appeal the trial court's order granting the secretary of health's motion for summary judgment.  Appellants filed a claim for declaratory and injunctive relief in a verified complaint against the Governor, Jay Inslee, and the Secretary of Health, Umair Shah, to prevent the enforcement of the mask mandate.  On appeal, appellants argue that the secretary's order (1) violates their right to free speech because wearing or not wearing a mask is symbolic speech, (2) does not survive strict scrutiny, and (3) compels speech.  They also argue that the secretary's order (4) is void because (5) the legislature did not properly delegate authority to the secretary. And, that (6) the Emergency Proclamation, enacted by the governor in response to the

No. 55970-6-II

coronavirus pandemic, was in excess of the governor's authority. Lastly, they argue that (7) the power delegated to a local health officer is improper.

We affirm the trial court and hold that the mask mandate does not implicate speech, therefore, we do not address whether the mask mandate survives strict scrutiny or compels speech. We also hold that the mask mandate is not void because the legislature properly delegated the authority to address an emergency to the secretary, the governor's Emergency Proclamation was not in excess of his authority, and the power delegated to the local health officer is not improper.

FACTS

I. COVID-19 AND THE MASK MANDATE

COVID-19 is a fatal, highly contagious virus that caused more than 980,000 deaths in the United States, and more than 12,000 deaths in Washington.[1] The virus is transmitted mainly through respiratory droplets or small particles produced as a person coughs, sneezes, or talks. A person may be infected without presenting symptoms or may transmit the virus before presenting with symptoms. Older people or people of any age with certain underlying medical conditions are at higher risk of complication or fatality following exposure to COVID-19. Due to the speed of COVID-19 transmission, an outbreak with patients requiring medical care often overwhelms the healthcare system. At the time this lawsuit commenced in 2021, few drugs or therapies, and

---

[1] U.S. Centers for Disease Control and Prevention, COVID Data Tracker (updated daily), https://covid.cdc.gov/covid-data-tracker/#datatracker-home; "COVID-19 Data Dashboard" Washington State Department of Health, doh.wa.gov/emergencies/covid-19/data-dashboard (Accessed 15 Apr. 2022).

2

No. 55970-6-II

no vaccines had been approved by the U.S. Food and Drug Administration to treat or prevent COVID-19.

On February 29, 2020, and following the first confirmed case of COVID-19 in Washington, Governor Jay Inslee issued a state of emergency in Washington through Proclamation 20-05 (Emergency Proclamation) under his authority under chapters 38.08, 38.52, and 43.06 RCW. The Emergency Proclamation stated that the U.S. Centers for Disease Control and Prevention (CDC) identified the potential public health threat posed by COVID-19 in the United States as "high." Clerk's Papers (CP) at 785. On June 24, 2020, the secretary of health issued a statewide order, Order 20-03, requiring all every person in Washington to wear masks in public (the mask mandate) pursuant to authority under RCW 43.70.130, RCW 70.05.070, and the governor's Emergency Proclamation.

The mask mandate stated purpose was to "help control and prevent the spread of COVID-19 in Washington State." CP at 120. The mask mandate applied in "any indoor or outdoor public setting." CP at 120. It also included a list of exceptions where people may remove their face masks and exempted certain groups from wearing a mask, including children younger than two years old and persons with a medical or mental health condition or disability.

Failure to comply with the order resulted in criminal penalties under RCW 70.050.120(4) and WAC 246-100-070(3). Specifically, any person who failed to obey the order would be guilty of a misdemeanor punishable with a fine not more than $100 or imprisonment not to exceed 90 days or both.

3

No. 55970-6-II

## II. EVIDENCE AT TRIAL AND PROCEDURAL HISTORY

Appellants filed a complaint against John Weisman, the Secretary of Health, seeking declaratory judgment and a permanent injunction preventing the enforcement of the mask mandate. Appellants asserted that the mask mandate was issued without legal authority and violated their rights to free speech and substantive due process. The secretary of health moved for summary judgment.

In support of the motion for summary judgment, the secretary presented evidence on the efficacy of masks in preventing the spread of COVID-19. For example, the CDC stated that "face coverings are one of the most powerful weapons we have to slow and stop the spread of the virus—particularly when used universally within a community setting." CP at 229. The secretary cited to studies proving the efficacy of community mask use, reducing transmission by up to 79 percent, and that mask wearing resulted in a reduction of new COVID-19 cases and is correlated with fewer reported symptoms.[2]

Appellants submitted studies and articles showing that the masks are not scientifically proven to combat the spread of COVID-19. For example, appellants cited to a study relied upon by the secretary which concluded that "there is no direct evidence" on a population-wide level that "widespread use of face masks reduces the spread of COVID-19." CP at 727 (alteration in original).

---

[2] Centers for Disease Control and Prevention, *Scientific Brief Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, https://www.cdc.gov/coronavirus/2019-ncov/science/ science-briefs/masking-science-sars-cov2.html.

No. 55970-6-II

In addition to claiming that masks are ineffective in preventing the spread of COVID-19, appellants cited evidence showing that COVID-19 and mask wearing is "politically polarizing." CP at 727. Specifically, appellants stated that people generally disagreed about

> the extent to which COVID-19 is life threatening, the extent to which masks help prevent the spread of the virus, the amount of trust that citizens should give to government officials' collection and interpretation of COVID-19 data, the right of faith-based communities to meet for religious services in the face of the danger posed by COVID-19.

CP at 727-28.

The trial court granted the secretary's motion for summary judgment and entered final judgment in favor of the secretary.[3] Appellants appeal the trial court's order granting the secretary of health's motion for summary judgment.

ANALYSIS

We review an order granting summary judgement de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Champagne v. Thurston County*, 163 Wn.2d 69, 76, 178 P.3d 936 (2008). The burden is on the nonmoving party to show that there is no genuine issue of material fact. *Hartley v. State*, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

---

[3] Appellants do not argue that the trial court erred in dismissing their substantive due process claim, so we do not address it. *Podbielancik v. LPP Mortgage Ltd.*, 191 Wn. App. 662, 668, 362 P.3d 1287 (2015) (In reviewing a grant of summary judgment, arguments made below but not raised on appeal are abandoned).

No. 55970-6-II

When reviewing an order granting summary judgment, we perform the same inquiry as the trial court, considering all evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *McDevitt v. Harborview Med. Ctr.*, 179 Wn.2d 59, 64, 316 P.3d 469 (2013); *Keck*, 184 Wn.2d at 370.

I. FREE SPEECH

A.     *Whether Wearing or Not Wearing a Mask is "Speech"*

1.     *The Mask Mandate Does Not Implicate the Right to Free Speech*

Appellants argue that the act of not wearing a mask communicates a political message, and is therefore entitled to the protections of the First Amendment. We disagree.

Although the First Amendment forbids restrictions on speech, federal case law has long recognized that the First Amendment protects more than the "spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L. Ed. 2d 342 (1989). "'Speech' includes nonverbal conduct if the conduct is 'sufficiently imbued with elements of communication.'" *First Covenant Church of Seattle v. City of Seattle*, 120 Wn.2d 203, 216, 840 P.2d 174 (1992) (quoting *Spence v. Washington*, 418 U.S. 405, 409, 94 S. Ct. 2727, 41 L.Ed.2d 842 (1974)).

In deciding whether conduct may constitute speech, thereby implicating the First Amendment, courts examine whether (1) the person intended to convey a message, and (2) whether it was likely that a person who viewed the conduct would understand the message. *Johnson*, 491 U.S. at 404. The United States Supreme Court rejected the idea that any conduct may be labeled as speech whenever the person engaging in the conduct intends to express or communicate an idea. *Johnson*, 491 U.S. at 404. The expression must be "overwhelmingly apparent" and not simply a kernel of expression. *Johnson*, 491 U.S. at 406. The fact that

6

No. 55970-6-II

"'explanatory speech is necessary is strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants protection' as symbolic speech." *Stewart v. Justice*, 502 F. Supp. 3d 1057, 1066 (S.D. W.Va. 2020) (quoting *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 66, 126 S. Ct. 1297, 164 L.Ed.2d 156 (2006)).

While Washington cases have not dealt with this exact argument, an extensive line of federal cases has established that the choice to wear a mask is not expressive conduct because "there are several non-political reasons why one may not be wearing a mask at any given moment." *Stewart v. Justice*, 518 F. Supp. 3d 911, 919 (S.D. W. Va. 2021). *See Minnesota Voters All. v. Walz*, 492 F. Supp. 3d 822, 837 (D. Minn. 2020) (holding that an order requiring face coverings did not target conduct with a significant expressive element); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1079 (D. Haw. 2021) (same); *Justice*, 502 F. Supp. 3d at 1066 (holding that failing to wear a mask is not expressive conduct because "failing to wear a face covering would likely be viewed as inadvertent or unintentional, and not as an expression of disagreement with the Governor."); *Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 236 (D. Md. 2020) (holding that wearing a mask could be viewed as a means of preventing the spread of COVID-19, not as expressive any message).

We apply the same analysis here and hold that wearing or not wearing a mask is not sufficiently expressive so as to implicate First Amendment protections. While an individual may choose to wear, or not wear, a mask as a way to make a political statement, the subjective intent of the person engaging in the conduct is not determinative. *Johnson*, 491 U.S. at 404 (the First Amendment protections of free speech are implicated when a two-part test is met). In addition to the person's intent to communicate a message, that message must also be "overwhelmingly

7

No. 55970-6-II

apparent" and understandable by the person viewing the message. *Johnson*, 491 U.S. at 404.

Here, there is a host of reasons why a person may not be wearing a mask. *See, e.g., Justice*, 518

F. Supp. 3d at 919. Therefore, not wearing a mask is not "overwhelmingly apparent" as

communicating a political message. *Rumsfeld*, 547 U.S. at 66.

All the above considerations, taken together, confirm that the act of wearing or not

wearing a mask is not expressive conduct, and thus does not invoke the protections of the First

Amendment.

2.      *There is No Genuine Issue of Material Fact*

Appellants argue that the trial court erred in finding that, as a matter of law, the act of

wearing or not wearing a mask does not qualify as political speech, but such a determination

should have been made by a jury. We disagree.

The nonmoving party bears the burden of proving that a genuine issue of material fact

exists. *Hartley*, 103 Wn.2d at 774. A fact is material if it might affect the outcome of the suit.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

And, a dispute about a material fact is genuine if the evidence "is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A genuine issue of

material fact does not exist merely because some alleged factual dispute exists. *Anderson*, 477

U.S. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249

(internal quotation marks omitted).

Appellants fail to meet their burden of proving that a genuine issue exists. Federal courts

have held, and we agree, that the act of wearing or not wearing a mask is not expressive conduct

8

No. 55970-6-II

sufficient to invoke First Amendment protections as a matter of law. *See e.g., Minnesota Voters All.*, 492 F. Supp. 3d at 837; *Denis*, 538 F. Supp. 3d at 1079; *Justice*, 502 F. Supp. 3d at 1066; *Hogan*, 461 F. Supp. 3d at 236. This is because appellants have to show more than the person's intent to communicate a message; they must show that the message is "overwhelmingly apparent" and understandable by the person viewing the message. *Johnson*, 491 U.S. at 406. The evidence appellants present fails to show that the act of not wearing a mask communicates an "overwhelmingly apparent" and understandable message by the person viewing the conduct. *See, e.g., Justice*, 502 F. Supp. 3d at 1066 (holding that failing to wear a mask is not expressive conduct because "failing to wear a face covering would likely be viewed as inadvertent or unintentional, and not as an expression of disagreement with the Governor."). Therefore, the evidence presented by the appellants, even when viewed in light most favorable to them, does not create a genuine issue of material fact. Instead, it merely evidences that some alleged factual dispute exists. *Anderson*, 477 U.S. at 247-48.

Appellants failed to meet their burden of showing that a genuine issue of material fact exists as to whether the act of wearing or not wearing a mask constitutes political speech.

## II. SECRETARY OF HEALTH AND THE GOVERNOR'S AUTHORITY

A. *Proper Delegation under RCW 43.70.130*

Appellants argue that the mask mandate is void ab initio because the legislature did not properly delegate authority to the secretary of health under RCW 43.70.130(7) and RCW 43.70.130(10) because the delegation is overly broad and vague. We disagree.

The Washington State Legislature may authorize the executive to take actions, and a delegation of legislative power is constitutional, only when it can be shown that (1) the

9

No. 55970-6-II

legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power. *Barry & Barry, Inc. v. Dep't of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972).

As to the first factor, the *Barry* court rejected a requirement for "exact legislative standards" required for a proper delegation because exact, strict requirements "cease[] to serve any valid purpose" and "impede[] efficient government." *Barry*, 81 Wn.2d at 159. As to the second factor, our Supreme Court held that judicial review is an adequate procedural safeguard. *State v. Crown Zellerbach Corp.*, 92 Wn.2d 894, 900, 602 P.2d 1172 (1979). And, when the statute in question proscribes criminal penalties for failure to comply, that criminal prosecution gives rise to a second set of procedural safeguards. *Crown Zellerbach Corp.*, 92 Wn.2d at 901.

The court's fundamental objective is to ascertain and carry out the legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. *Dep't of Ecology v. Campbell & Gwinn, LLC,* 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Under the plain meaning rule, courts may also examine all the legislature has said in the statute and related statutes which disclose legislative intent about the provision in question. *Campbell & Gwinn, LLC*, 146 Wn.2d at 9-10. Thus, to ascertain the legislative intent, the plain meaning analysis does not examine each provision in vacuum. *Campbell & Gwinn, LLC*, 146 Wn.2d at 9-10.

10

No. 55970-6-II

RCW 43.70.130(10) states, in relevant part, that the secretary of health shall "[t]ake such measures as the secretary deems necessary in order to promote the public health." And, the secretary shall

> Have the same authority as local health officers, except that the secretary shall not exercise such authority unless the local health officer fails or is unable to do so, or when in an emergency the safety of the public health demands it, or by agreement with the local health officer or local board of health.

RCW 43.70.130(7). The secretary also has the authority to "[s]trictly enforce all laws for the protection of the public health" and "[i]nvestigate outbreaks and epidemics of disease that may occur and advise local health officers as to measures to be taken to prevent and control the same." RCW 43.70.130(3), (5).

As to the first *Barry* factor, RCW 43.70.130 defines what powers are delegated to the secretary and which body carries out those powers. Firstly, RCW 43.70.130 grants, in general terms, the secretary of health the power to take measures "necessary in order to promote the public health," have the same authority as local health officers in a state of emergency, and enforce all laws to protect the public health. RCW 43.70.130(10), (7), and (3). Although RCW 43.70.130 delegates broad authority to the secretary, a delegation is not improper simply because it is broad. *See Barry*, 81 Wn.2d at 159 ("it is time to abandon the notion that the presence or absence of vague verbalisms like 'public interest' or 'just and reasonable' make all the difference between valid legislation and unlawful delegation."). The mask mandate falls squarely within the delegated powers: the Secretary acted within his authority under subsection (10) by taking

11

No. 55970-6-II

measures "necessary in order to promote the public health." The COVID-19 virus has caused over 80,000 deaths in Washington.[4] The virus is also highly contagious.[5]

Alternatively, the mask mandate also falls within the secretary's authority as delegated by subsection (7) because the governor has declared a state of emergency. And, the governor authorized the secretary of health to act as local health officer pursuant to the state of emergency.[6]

In fact, the broad nature of this delegation is line with the reasoning in *Barry*, where the court dedicated a large portion of the opinion rejecting the need for strict, exact standards and guidelines for a delegation because doing so "impedes efficient government and conflicts with the public interest in administrative efficiency in a complex modern society." *Barry*, 81 Wn.2d at 159. Such principles are even more apparent in the context of a public health emergency, which by its nature involves unforeseen and rapidly changing circumstances. *See Slidewaters LLC v. Dep't of Labor & Indus.*, 4 F.4th 747, 753 (9th Cir. 2021), *cert. denied sub nom.*

---

[4] *See* U.S. Centers for Disease Control and Prevention, COVID Data Tracker (updated daily), https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

[5] *See* Wash. State Dep't of Health, COVID-19 Data Dashboard, https://www.doh.wa.gov/Emergencies/COVID19/DataDashboard.

[6] Appellants argue that the legislature improperly delegated authority to the secretary pursuant to RCW 43.70.130(7) because subsection (7) authorizes the secretary to act as a local health officer "only when" the local health officer is "unable to act." Br. of Appellant at 43-44. But, the statute clearly states that the secretary is authorized to act when "the local health officer fails or is unable to do so, *or* when in an emergency the safety of the public health demands it." RCW 43.70.130(7). The governor declared a state of emergency and authorized the secretary to act as the local health officer. Appellants' argument ignores the plain language of the statute and therefore fails.

No. 55970-6-II

*Slidewaters LLC v. Dep't of Labor & Indus.*, ___ U.S. ___, 142 S. Ct. 779, 211 L. Ed. 2d 487 (2022). The situation presented by the COVID-19 pandemic is a perfect demonstration for why the *Barry* court emphasized the need for flexibility in upholding legislative delegations. *Barry*, 81 Wn.2d at 159 (holding that requiring strict delegation guidelines serves no purpose and impedes efficient government). Without such expansive delegation to the secretary, we may only speculate on how the State could have responded to the state of emergency.

As to the second *Barry* factor, procedural safeguards exist to control arbitrary action or abuse of discretionary power. *See Barry*, 81 Wn.2d at 159. As evidenced by the present case, judicial review is available as a procedural safeguard for petitioners to examine alleged arbitrary actions or abuse of discretionary power by an executive. *Crown Zellerbach Corp.*, 92 Wn.2d at 900 (judicial review is an adequate procedural safeguard). And, since the mask mandate criminally penalizes any person who does not obey the mandate, a second set of procedural safeguards exists. Therefore, the second *Barry* factor is met.[7]

Thus, the secretary of health's authority was properly delegated.

---

[7] Appellants also argue that the availability of judicial review cannot be a proper procedural safeguard if courts do not have the authority to determine whether the emergency has ended. We disagree. As discussed below, our Supreme Court decided that the governor is empowered to decide when an emergency begins and ends. *Cougar*, 97 Wn.2d at 476 ("The Governor's discretion is the same in determining both the start and end" of a state of emergency). However, simply because the Supreme Court held that the governor has discretion in declaring the end of an emergency in one context does not mean that judicial review is entirely unavailable as a procedural safeguard in other circumstances where facts support the need to control arbitrary action or abuse of discretionary power. *Barry*, 81 Wn.2d at 159. Thus, the argument fails in discrediting judicial review as a procedural safeguard.

No. 55970-6-II

B.        *The Governor's Authority to Issue an Emergency Proclamation*

Appellants argue that the governor did not have authority to issue an emergency proclamation.  And, because the governor does not have authority to issue an emergency proclamation, the proclamation improperly granted the secretary authority to act as a local health officer under RCW 43.70.130(7).  We disagree.

RCW 43.06.010 assigns powers and duties to the governor, including that "the governor may, after finding that a public disorder, disaster, energy emergency, or riot exists within this state or any part thereof which affects life, health, property, or the public peace, proclaim a state of emergency."  RCW 43.06.010(12).  RCW 43.06.210  also provides that "[t]he proclamation of a state of emergency and other proclamations or orders issued by the governor . . . the governor must terminate said state of emergency proclamation when order has been restored in the area affected."  *See* RCW 43.06.220 (outlines what the governor may prohibit in a state of emergency).

Our Supreme Court recently held that "[t]he proclamation of an emergency and the governor's issuance of executive orders to address that emergency are by statute committed to the sole discretion of the Governor."  *Colvin v. Inslee*, 195 Wn.2d 879, 895, 467 P.3d 953 (2020) (internal quotation marks omitted).  It reasoned that "[t]he law empowers the governor to 'proclaim a state of emergency' in response to a disaster which threatens 'life, health, property, or the public peace.'"  *Colvin*, 195 Wn.2d at 895 (quoting RCW 43.06.010(12)).  Our Supreme Court affirmed the governor's power to

> prohibit "[a]ny number of persons . . . from assembling," RCW 43.06.220(1)(b),
> "to waive or suspend" "any statute, order, rule, or regulation [that] would in any
> way prevent, hinder, or delay necessary action in coping with the emergency,"

14

No. 55970-6-II

> RCW 43.06.220(2)(g), to "order the state militia . . . to assist local officials to restore order," RCW 43.06.270, and more.

*Colvin*, 195 Wn.2d at 895-96 (alterations in original); *Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 476, 647 P.2d 481 (1982), *overruled in part by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019) (holding that "[t]he proclamation of an emergency and the governor's issuance of executive orders restricting access to a particular locality are by statute committed to the sole discretion of the Governor."). Federal courts have also affirmed the governor's authority to declare a state of emergency in *Slidewaters LLC*, where the Ninth Circuit held that the governor had the lawful authority under RCW 43.06.010(12) to issue Proclamation 20-05 declaring state of emergency. 4 F.4th at 755.

The governor's emergency authority has been repeatedly and recently upheld by the Washington Supreme Court. *See* RCW 43.06.010(12), RCW 43.06.210, RCW 43.06.220; *Cougar*, 97 Wn.2d at 474; *Colvin*, 195 Wn.2d at 895. Because this issue was addressed and resolved by our Supreme Court under the same circumstances dealing with the COVID-19 pandemic, we apply the holding in *Cougar* and *Calvin* and hold that the governor was authorized to issue an emergency proclamation. *Cougar*, 97 Wn.2d at 474; *Colvin*, 195 Wn.2d at 895.[8]

Appellants argue that the governor's authority is also invalid because despite RCW 43.06.210 mandating the governor to terminate the state of emergency "when order has been restored," it provides no definition for when that occurs. Br. of Appellant at 46-47. However, as

---

[8] Appellants analyze the governor's authority under the *Barry* factors, but considering that the Supreme Court and the Ninth Circuit have both held that the governor's authority is valid, we do not see a need to walk through each *Barry* factor to come to the same conclusion.

15

No. 55970-6-II

the Supreme Court held in *Barry*, a delegation need not be exact or strict to be valid. *Barry*, 81

Wn.2d at 159. Simply because a delegation is expansive, as it should be in a state of an

unforeseen and predictable emergency, does not mean a delegation of power is invalid. *Barry*,

81 Wn.2d at 159. And, our Supreme Court has confirmed that it is within the Governor's

discretion to decide when an emergency is over and "order has been restored." RCW 43.06.210.

*See, e.g., Cougar,* 97 Wn.2d at 476 ("The Governor's discretion is the same in determining both

the start and end" of a state of emergency). Thus, the Governor's authority is not invalid.

The Governor properly exercised his authority, and validly issued an emergency

proclamation.

C.    *Authority of a Public Health Official Under RCW 70.05.070*

Appellants argue that even if the governor properly proclaimed a state of emergency, he

cannot delegate power to the secretary to act as a local health officer because RCW 70.05.070,

the statute outlining the duties and powers of local health officers, contains an improper

delegation under subsections (3) and (9). The argument fails.

RCW 70.05.070 provides that

> The local health officer, acting under the direction of the local board of
> health or under direction of the administrative officer appointed under RCW
> 70.05.040 or 70.05.035, if any, shall:
>     . . . .
>
>     (3) Control and prevent the spread of any dangerous, contagious or
> infectious diseases that may occur within his or her jurisdiction;
>
>     . . . .
>
>     (9) Take such measures as he or she deems necessary in order to promote
> the public health.

RCW 70.05.070(3), (9).

16

No. 55970-6-II

The delegation contained in RCW 70.05.070(3) and (9) are proper under the *Barry* factors for the same reason that the delegation under RCW 43.70.130 is proper. Under the first *Barry* factor, this opinion resolves the same issue appellants keep arguing—that the delegation is overbroad—by citing to *Barry*, which clearly did not intend to require strict guidelines for a delegation to be valid. *Barry*, 81 Wn.2d at 159 (the *Barry* court rejected a requirement for "exact legislative standards" because exact, strict requirements serve no purpose and impede on governmental efficiency). The delegation outlines, as required by *Barry*, guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it. *Barry*, 81 Wn.2d at 159. Subsection (3) and (9) allow a public health officer, in this context, the secretary, to control and prevent the spread or contagious diseases and take measure necessary for the public health.

Specifically, appellants focus on the breadth of the term "'promote the public health.'" Br. of Appellant at 50 (quoting RCW 70.05.070(9)). However, the *Barry* court addressed appellants' same concern by explaining that "it is time to abandon the notion that the presence or absence of vague verbalisms like 'public interest' or 'just and reasonable' make all the difference between valid legislation and unlawful delegation." *Barry*, 81 Wn.2d at 160-61. Therefore, the existence of a broad term like "promote the public health" does not invalidate the delegation of power to a local health officer. The first *Barry* factor is met.

As to the second *Barry* factor, the above-described available procedural safeguards apply here as well. *See Crown Zellerbach Corp.*, 92 Wn.2d at 900 (judicial review is an adequate procedural safeguard). The delegation in RCW 70.05.070 is proper.

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55970-6-II

CONCLUSION

In sum, the mask mandate does not implicate speech, therefore, we do not address whether the mask mandate survives strict scrutiny or compels speech. And, the mask mandate is not void because the legislature properly delegated the authority to address an emergency to the secretary, the governor's Emergency Proclamation was not in excess of his authority, and the power delegated to the local health officer is not improper. We affirm.

_____
Worswick, J.

I concur:

_____
Cruser, A.C.J.

VELJACIC, J. — (Dissenting) I agree with my colleagues in the majority that refusal to wear a face mask in the context at issue here does not qualify as expressive conduct subject to protection under the First Amendment of the United States Constitution. But I write separately because I disagree with the delegation of emergency authority absent additional procedural safeguards and a time limit for exercise of the authority.

The test set forth in *Barry & Barry, Inc., v. Department of Motor Vehicles*, 81 Wn.2d 155, 159, 500 P.2d 540 (1972), explains that legislative power is justified (1) when it can be shown that the legislature has provided standards which define in general terms what is to be done and the administrative body which is to do it, and (2) that procedural safeguards exist to control arbitrary

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 55970-6-II

administrative action and abuse of discretionary power. Our Supreme Court has moved away from requiring administrative review in addition to judicial review in some circumstances, instead concluding that judicial review alone is a sufficient procedural safeguard to control arbitrary administrative action and abuse of discretionary power. *State v. Crown Zellerbach*, 92 Wn.2d 894, 900-01, 602 P.2d 1172 (1979) (considering a hydraulic permit application reviewed by the Department of Fisheries and the Department of Game; holding that while the statute in question did not expressly provide for procedural safeguards, the delegation satisfied *Barry's* procedural safeguard prong because any proceeding arising under the statute in question was subject to the administrative procedures act). *Compare with McGee Guest Home, Inc. v. Dep't of Soc. & Health Servs.*, 142 Wn.2d 316, 327, 12 P.3d 144 (2000) (reviewing statute allowing Department of Social and Health Services to establish a two-tiered reimbursement structure regarding services provided by congregate care facilities; holding that even if the agency was not subject to the Administrative Procedure Act, chapter 34.05 RCW, *Barry's* procedural safeguard prong is met because appellants always have the right to seek judicial review).

In light of this precedent, it is plainly evident that the emergency authority of the appointed Secretary of Health, and the Governor are subject to judicial review, and as a matter of law such review protects against arbitrary administrative action and abuse of discretionary power. But it is hard to ignore that the precedent arises from comparatively limited administrative action. On the other hand, most would agree that the authority at issue in this case had a much broader and lengthy impact on the entirety of the State. For this reason alone, I would distinguish the precedent.

Even so, I am not convinced that the legislature, in making the grant of authority, anticipated such a broad and lengthy imposition of emergency health measures when it first

19

No. 55970-6-II

enacted chapter 43.06 RCW. It is true that our Supreme Court has recognized that the broad grant of authority "evidence[s] a clear intent by the legislature to delegate requisite police power to the governor in times of emergency." *Cougar Bus. Owners Ass'n v. State*, 97 Wn.2d 466, 474, 647 P.2d 481 (1982), *overruled in part by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). But this begs the question: "for how long"?

Certainly, while initial executive response to emergencies should be robust and unhindered by the burden of administrative or legislative oversight, this should not be the case over a longer period of time. Of course, in the early days of an emergency, Washingtonians would suffer if required to wait on the executive to set a legislative session, assemble the necessary quorum, and oversee a vote on a course of action. But at some point, over the long term, an emergency grows less emergent. After all, time allows for the opportunity to reflect. That same opportunity should include legislative review.

In all instances, we must be careful with such broad grants of authority. We would do well to employ a healthy skepticism of such authority upon objective consideration of who might possibly wield it at some point, or what they might deem an emergency. And while the Governor's authority is at least bestowed upon an elected official, that of the Secretary of Health has no such accountability to those who decide who will lead them.

Accordingly, I respectfully dissent.

Veljacic, J.

20